

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-26-1996

# Smith v. Holtz

Precedential or Non-Precedential:

Docket 95-7533,95-7534

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Smith v. Holtz" (1996). *1996 Decisions.* Paper 164.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/164

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS. 95-7533, 95-7534


JAY C. SMITH

v.

JOHN J. HOLTZ, Bureau of Technical Services, Pennsylvania;
RONALD F. COLYER, Bureau of Technical Services, Pennsylvania
State Police; VICTOR DOVE; JOHN J. PURCELL, Special Agent In
Charge, Central Regional Office, Bureau of Criminal
Investigations, Office of the Attorney General;
WILLIAM J. LANDER, Bureau of Criminal Investigations,
Office of the Attorney General; PAUL YATRON,

Appellants in No. 95-7533


JAY C. SMITH

v.

JOSEPH P. WAMBAUGH,

Appellant in No. 95-7534


On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action Nos. 93-cv-01428 and 94-cv-01470)


Argued May 3, 1996

BEFORE:  STAPLETON, COWEN and SEITZ, Circuit Judges

(Opinion Filed June 26, 1996)


(Argued)

Suburban Station

Gerald J. Williams

Williams & Cuker
1617 JFK Boulevard
One Penn Center at

Suite 800
Philadelphia, PA  19103

(Argued)

General

General

General

General of PA

Square

Appellants

(Argued)

Professional Corp.

Floor

Appellant

                        Attorney for Appellee
                        in No. 95-7533

Thomas W. Corbett, Jr.
Attorney General
Gregory R. Neuhauser

Senior Deputy Attorney

Calvin R. Koons
Senior Deputy Attorney

John G. Knorr, III
Chief Deputy Attorney

Office of Attorney

15th Floor, Strawberry

Harrisburg, PA 17120
  Attorneys for

  in No. 95-7533

George A. Bochetto
Stephen E. Skovron

Bochetto & Lentz
1524 Locust Street
Philadelphia, PA
  Attorneys for Appellee
  in No. 95-7534

Mark R. Hornak (Argued)
George H. Crompton
Buchanan Ingersoll

One Oxford Centre
301 Grant Street, 20th

Pittsburgh, PA 15219
  Attorneys for

  in No. 95-7534

OPINION OF THE COURT

STAPLETON, Circuit Judge:

In Heck v. Humphrey, 114 S. Ct. 2364 (1994), the Supreme Court held that 42 U.S.C. 1983 does not provide a cause of action to recover monetary compensation for an allegedly unconstitutional conviction or imprisonment where recovery would necessarily imply the invalidity of an outstanding criminal conviction of a state court. In these consolidated civil rights actions, Jay Smith seeks monetary compensation for his allegedly unconstitutional conviction and imprisonment on murder charges. On direct appeal from Smith's murder conviction, the Supreme Court of Pennsylvania reversed that conviction due to a state-law evidentiary error and remanded for a new trial. Before the retrial, however, that court ordered the dismissal of all charges against Smith based on newly discovered evidence of prosecutorial misconduct. In these ensuing civil rights cases, the defendants unsuccessfully sought dismissal of Smith's claims on statute of limitations grounds, arguing that they accrued when his conviction was reversed, even though he was still the subject of an ongoing prosecution at that time. Since Smith's claims were filed more than two years after that reversal but within two years of the dismissal of all charges against him, we must decide whether, under the teachings of Heck, a claim is cognizable under 1983 where its success would necessarily imply the invalidity of a future conviction that might be entered on a pending criminal charge. We hold that such a claim is not cognizable under 1983. It necessarily follows that claims like those of Smith do not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist. Since this potential existed in Smith's case until the Pennsylvania Supreme Court ordered the charges dismissed on September 18, 1992, Smith's claims did not accrue before that date. Accordingly, Smith's claims were timely filed and we will affirm.

I.

In April 1986, a jury convicted Smith of the murders of Susan Reinert and her children. Smith immediately appealed. While the appeal was ongoing in July 1988, the government disclosed that police investigators had withheld potentially exculpatory evidence. On December 22, 1989, on direct appeal the Supreme Court of Pennsylvania reversed Smith's convictions on the unrelated ground that the Court of Common Pleas had improperly admitted hearsay evidence. Commonwealth v. Smith, 568 A.2d 600 (Pa. 1989). The Pennsylvania Supreme Court remanded for a new trial.

Smith remained in prison pending a second trial. He promptly moved to dismiss the ongoing prosecution on double jeopardy grounds, arguing that the withholding of exculpatory evidence at the first trial amounted to prosecutorial misconduct. Smith had not previously raised this issue because he had not learned of the misconduct until after his trial and because the supporting evidence was not part of the record on direct appeal. On September 18, 1992, the Pennsylvania Supreme Court ordered all

charges dismissed based on the double jeopardy clause of the Pennsylvania Constitution. Commonwealth v. Smith, 615 A.2d 321 (Pa. 1992). The court held that Pennsylvania's double jeopardy clause prevented retrial because the withholding of evidence was "intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." Id. at 325. Smith was immediately released.

On September 15, 1993, Smith filed a 1983 claim against John Holtz, Ronald Colyer, Victor Dove, John Purcell, William Lander, and Paul Yatron (the "Holtz case"). Holtz, Colyer, Dove, Purcell, and Lander were government officials involved in the investigation. Yatron was an attorney with the Pennsylvania Attorney General's office. Smith alleged that the misconduct in connection with the concealing of the exculpatory evidence violated his Fifth, Sixth, and Fourteenth Amendment rights. On September 14, 1994, Smith filed a separate 1983 suit against Joseph Wambaugh (the "Wambaugh case"). He claimed that Wambaugh, an author, had conspired with police investigators to conceal exculpatory evidence and to fabricate evidence linking Smith to the murders, in order to make money from a book and a television mini-series. He alleged violations of his Fourth, Sixth, and Fourteenth Amendment rights. In both cases he sought to recover the damages resulting from his unlawful conviction and confinement.

The defendants in both cases argued that Smith's claims were time-barred by the applicable two-year Pennsylvania statute of limitations because they accrued when his conviction was reversed in 1989. Based on Heck v. Humphrey, 114 S. Ct. 2364 (1994), the district court concluded that Smith's 1983 claims were timely filed because they did not accrue until the Pennsylvania Supreme Court ordered all charges dismissed in 1992. We consolidated the interlocutory appeals filed by all defendants under 28 U.S.C. 1292(b).

II.

The outcome of this appeal turns on Heck v. Humphrey, 114 S. Ct. 2364 (1994). Heck was convicted of voluntary manslaughter in a state court. While his direct appeal was pending, he filed a 1983 suit against two prosecutors and a government investigator. He sought monetary damages resulting from his allegedly unlawful conviction. The district court dismissed the case and the Seventh Circuit Court of Appeals affirmed. Before the case reached the Supreme Court, the state supreme court denied relief in Heck's direct appeal of his criminal conviction, the district court denied Heck's habeas petition, and the Seventh Circuit affirmed that denial. Id. at 2368.

The Supreme Court granted certiorari to decide whether under 1983 a state prisoner could pursue money damages premised on an allegedly unlawful outstanding conviction. The Court began its analysis by noting that since 1983 creates a species of tort liability, the common law of torts "provide[s] the appropriate starting point for the inquiry." Id. at 2370. The Court observed that the common law tort of malicious prosecution

was analogous to Smith's claim because a malicious prosecution claim allows a plaintiff to recover for unlawful imprisonment pursuant to legal process.  A necessary element of a malicious prosecution claim is the termination of the criminal proceedings in favor of the accused:

> This requirement "avoids parallel litigation over the issue of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction."  Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit."

Id. at 2371 (alterations in original) (citations omitted).

For these reasons the Court held that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to  1983 damage actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement."  Id. at 2372.  Accordingly, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a  1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id.  A claim seeking such damages is not cognizable under  1983 even though such claim is within the literal terms of  1983.  Id.

Accordingly, a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  Id.  If not, the action should be allowed to proceed:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the  1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a  1983 action, even if successful would not necessarily imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the  1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

Id. at 2372-73 n.7 (citations omitted).

Since Heck's claims challenged the legality of his conviction and his conviction remained in effect, the Court dismissed Heck's claims as not cognizable under 1983. Id. at 2374.

Smith asserts in his complaints that the defendants suppressed exculpatory evidence and contrived inculpatory evidence. His claims seek damages resulting from his unlawful conviction and confinement. If he had brought these claims before September 18, 1992, when the Pennsylvania Supreme Court ordered the charges against him dismissed, success on these claims would have necessarily implied the invalidity of any future conviction on the still pending criminal charges.

Heck did not directly address claims that, if successful, would necessarily imply the invalidity of a potential conviction on a pending criminal charge. In certain portions of the opinion, the Court spoke in terms of claims that, if successful, imply the invalidity of "outstanding" convictions. Other portions of the opinion, however, refer to claims that, if successful, imply the invalidity of convictions without specifying whether this includes claims that, if successful, would imply the invalidity of potential convictions that may result from pending charges.

The Supreme Court did not address this issue because it was not presented by the facts in Heck. The Court had before it the 1983 claim of a plaintiff who was serving a sentence on an outstanding conviction. The Court thus had no occasion to determine the scope of permissible 1983 claims by a defendant in an ongoing criminal prosecution. Accordingly, we must look to the reasoning behind the Heck rule to determine whether a claim that, if successful, would necessarily imply the invalidity of a conviction on pending criminal charges is cognizable under 1983.

The Supreme Court observed that the problem presented by Heck's case is that it lay "at the intersection" of the Civil Rights Act of 1871 and the federal habeas corpus statute. Heck, 114 S. Ct. at 2369. Some accommodation was required because the federal habeas statute has an express exhaustion requirement that precludes the filing of a federal habeas petition holding the potential for interference with determinations made in state criminal proceedings, while 1983 requires no exhaustion of state remedies. Id. The Court accommodated these two statutes by holding that 1983 actions are subject to the "hoary principle" that civil tort actions are not the appropriate vehicle for challenging the validity of convictions and sentences. The express objectives of this holding were to preserve consistency and finality, and to prevent "a collateral attack on [a] conviction through the vehicle of a civil suit." Id. at 2371.

We find that these concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. A claim by a defendant in an ongoing criminal prosecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas

corpus statute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which Heck sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.

Because of these concerns, we hold that a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under 1983. See Hamilton v. Lyons, 74 F.3d 99 (5th Cir. 1996) (interpreting Heck to prevent accrual of 1983 claims that would necessarily imply the invalidity of convictions on pending criminal charges). It necessarily follows that so long as success on such a claim would necessarily imply the invalidity of a conviction in the pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist. This did not occur in Smith's case until the Pennsylvania Supreme Court ordered the charges dismissed on September 18, 1992. Smith's claims thus did not accrue before that date and, since he filed those claims within two years thereafter, they are not time barred.

                              III.

Wambaugh argues, in the alternative, that if Smith's claims did not accrue before the 1992 dismissals, they have yet to accrue. The contention is that a judicial finding of actual innocence is a prerequisite for a common law malicious prosecution claim and, accordingly, is a prerequisite here. Since the double jeopardy ruling of the Pennsylvania Supreme Court was not premised on a finding of Smith's actual innocence, the argument goes, he has not satisfied that prerequisite. We are unpersuaded.

First, Wambaugh misstates the common law of malicious prosecution. Actual innocence is not required for a common law favorable termination, see Restatement of the Law of Torts 659, 660 (1938), and a dismissal of charges on double jeopardy grounds is a common law favorable termination. E.g., Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993).

But, more importantly, Wambaugh misreads Heck. While the Heck court looked to the common law for guidance, it did so solely for the purpose of accommodating the congressional intent reflected in the civil rights and habeas corpus statutes. As a result, Heck should not be read to incorporate all of the common law of malicious prosecution into the federal law governing civil rights cases of this kind. Heck represents a limitation on the availability of relief for constitutional torts that extends no further than the congressional concerns which justify it. As we have explained, those concerns dictate that a district court decline to entertain a civil rights claim asking monetary compensation for an allegedly unlawful conviction or imprisonment

where success on that claim would necessarily imply the invalidity of an outstanding conviction or a potential conviction in a pending criminal proceeding.  When that outstanding conviction or that pending criminal proceeding ceases to exist, however, the justification for barring access to the federal courts likewise ceases. This means, among other things, that the rationale of Heck will not support a requirement that a civil rights plaintiff like Smith must have judicially established his innocence before invoking  1983.


                              IV.
              For the foregoing reasons, we will affirm.