171 F.3d 117
 Ronnie COVINGTON, Plaintiff-Appellant,
v.
The CITY OF NEW YORK; New York City Police Department; Lee
P. Brown, Commissioner, New York City Police Department;
Raymond Kelly, First Deputy Commissioner, New York City
Police Department; Robert Johnston, Chief, New York City
Police Department; "A Doe", Tour Commander, 108 Pct., New
York City Police Department; "B Doe", Desk Lieutenant, 108
Pct., New York City Police Department; "C Doe",
Sergeant-Supervisor, 108 Pct., New York City Police Dept.;
Jacques Guillois, Police Officer, 108 Pct., New York City
Police Department; "D-Doe", Police Officer, 108 Pct., New
York City Police Department; "Four Other Police Officers",
108 Pct., New York City Police Department; County of
Queens, New York; John J. Santucci, District Attorney,
Queens County; "K Doe", Assistant District Attorney, Queens
County, Defendants-Appellees.
 Docket No. 96-2026.
 United States Court of Appeals,
Second Circuit.
 Submitted March 31, 1998.
Decided March 18, 1999.
 
 (Ronnie Covington, Pro Se, Comstock, NY).
 (Paul A. Crotty, Corporation Counsel of the City of New York, Margaret G. King, Assistant Corporation Counsel, New York, NY, of counsel), for Defendants-Appellees.
 Before: PARKER, Circuit Judge, EGINTON* and GLASSER,** District Judges.***
 Vacated and Remanded. Judge Glasser dissents with a separate opinion.
 PARKER, Circuit Judge.
 
 
 1
 Ronnie Covington, pro se, appeals from a judgment of the United States District Court for the Eastern District of New York (Eugene H. Nickerson, Judge ), entered June 5, 1995, dismissing his civil rights complaint, alleging, inter alia, a false arrest claim under 42 U.S.C. § 1983, and from a judgment entered November 9, 1995 denying Covington's motion to amend or vacate the June 5, 1995 judgment. The only question on appeal is whether the district court correctly dismissed Covington's false arrest claim as having been brought beyond the applicable three-year statute of limitations. Although more than three years had elapsed between the date the complaint was filed and the date of the allegedly false arrest, less than three years had elapsed between the filing of the complaint and the date of dismissal of the state criminal proceedings against Covington relating to the allegedly false arrest. Thus, the question in this case is when Covington's false arrest claim accrued so as to trigger the statute of limitations.
 
 
 2
 We hold that the answer to this question turns on whether a judgment in Covington's favor on the false arrest claim would have undermined the validity of any potential conviction in the criminal proceedings against him. See Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); Woods v. Candela, 47 F.3d 545 (2d Cir.1995)("Woods II "). If a favorable determination on the false arrest claim would in fact have undermined the validity of any potential conviction against Covington resulting from the state criminal proceedings, then Covington's false arrest claim would not accrue until those criminal proceedings terminated, and his false arrest claim would not now be time-barred. However, because we are unable to make this determination on the basis of the record before us, we vacate the dismissal and remand this case to the district court for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 
 3
 On February 17, 1990, Covington was arrested for allegedly stealing numerous cases of wine from the premises of Ernst & Julio Gallo Wine Distributors, Inc. ("Gallo Wines") and for causing damage to property. Covington claimed that he was headed towards the subway, after having seen several movies and eaten dinner and after checking on his car that was parked across the street from Gallo Wines, when he was approached by various police officers and security guards associated with Gallo Wines. The police allegedly held Covington at gunpoint, and forcibly transported him to the police station, where he was compelled to confess. The police then formally charged Covington with Grand Larceny in the fourth degree, Criminal Mischief in the third degree, and Criminal Trespass in the third degree. Covington was transported to the Central Booking Unit in Queens, and imprisoned.
 
 
 4
 On June 10, 1991, the Criminal Court of the City of New York dismissed the criminal prosecution against Covington on the charges stemming from this arrest for the People's failure to prosecute the case within the time required by New York's speedy trial provision. N.Y.Crim. Proc. Law § 30.30.
 
 
 5
 On June 2, 1994,[1] Covington handed to prison officials for transmittal to the court, a complaint alleging civil rights violations under 42 U.S.C. § 1983 for his false arrest and subsequent detention. The suit was brought against almost forty defendants, including the City of New York, the New York City Police Department ("NYPD"), the former Police Commissioner, Deputy Commissioner, and Police Chief, various police officers and supervisors, Queens County, its District Attorney and an assistant district attorney (collectively, the "City Defendants"), Gallo Wines, and various businesses, affiliates, officers and employees associated with Gallo Wines (collectively, the "Business Defendants"). Covington filed an amended complaint in November 1994.[2] Covington alleged false arrest, use of excessive force, malicious prosecution, and conspiracy to violate his civil rights.
 
 
 6
 In December 1994 and January 1995, two groups of Business Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that the complaint had been filed after the applicable three-year statute of limitations had run. In February 1995, the City Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) on the grounds that: (1) the false arrest, excessive force, and state law claims were time-barred under the applicable statute of limitations; (2) the malicious prosecution claim was legally insufficient; (3) the complaint did not allege facts sufficient to show a conspiracy; (4) Queens County and the NYPD were not suable entities; (5) the complaint failed to allege the personal involvement of certain defendants; and (6) the District Attorney was immune from suit.
 
 
 7
 In a Memorandum and Order dated May 23, 1995, the district court sua sponte converted the parties' Rule 12(b)(6) motions into motions for summary judgment under Rule 56(c) because the parties had submitted material outside the pleadings. Covington, 1995 WL 322222, at * 2. The district court held that the applicable statute of limitations for § 1983 actions in New York was three years, but that federal law governed the date the limitations period would begin to run. Id. The district court rejected Covington's contention that the statute of limitations for the false arrest and excessive force claims began to run when the criminal prosecution against him based on the arrest in question was terminated on June 10, 1991. Instead, the court held that the limitations period began to run when Covington was arrested and allegedly battered, namely on or about February 19, 1990, and accordingly granted summary judgment in favor of the defendants. Id. at * 3.
 
 
 8
 The district court also rejected Covington's claim that the limitations period had not run because the defendants were part of an ongoing conspiracy to violate his civil rights. Id. The court found that, even liberally construed, Covington's complaint failed to allege any facts that would tend to suggest the existence of a conspiracy. Finally, as to Covington's malicious prosecution claim, the district court reasoned that that claim was not time-barred because the limitation period only began to run when the underlying criminal action was conclusively terminated, which was June 10, 1991. The district court nevertheless dismissed that claim because Covington had failed to establish an essential element of the cause of action, namely that the criminal proceedings, which had been dismissed for failure to comply with New York's speedy trial requirement, had terminated in his favor. Id. at * 3-* 4.
 
 
 9
 Covington subsequently filed a motion pursuant to Rules 59(e) and 60(b) to alter and amend or vacate the district court's judgment. The district court denied the motion. Covington timely filed a notice of appeal in December 1995, but failed to file an appellate brief in accordance with this Court's scheduling order. Accordingly, this Court dismissed Covington's appeal and notified Covington that his case was closed and that he needed to file a motion for reinstatement if he wished to pursue the appeal. Covington filed a motion to reinstate the appeal, which we granted only with respect to that portion of his appeal concerning the dismissal of his false arrest claim. Covington v. City of New York, No. 96-2026 (2d Cir. July 25, 1997). We denied reinstatement as to Covington's remaining claims on the ground that they were frivolous within the meaning of 28 U.S.C. § 1925(e). Accordingly, we now consider Covington's arguments only with respect to the false arrest claim.
 
 II. DISCUSSION
 
 10
 We review de novo a district court's grant of summary judgment, Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir.1996), whether that grant arose from a motion for summary judgment or from a district court's conversion of a motion to dismiss into a motion for summary judgment. See Buti v. Perosa, S.R.L., 139 F.3d 98, 101 (2d Cir.1998) (reviewing de novo a grant of summary judgment that was converted from a motion to dismiss). "Summary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels, 77 F.3d at 35.
 
 
 11
 The court below correctly reasoned that although New York law provides the applicable statute of limitations, federal law governs the question of when a false arrest claim accrues. See Morse v. University of Vt., 973 F.2d 122, 125 (2d Cir.1992). Generally speaking, under federal law " 'the time of accrual [is] that point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action.' " Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980) (quoting Bireline v. Seagondollar, 567 F.2d 260, 263 (4th Cir.1977)). However, in the case of some actions brought under § 1983, this general rule is subject to the Supreme Court's analysis in Heck. There, the Court held that:[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus ...
 
 
 12
 Heck, 512 U.S. at 486-87, 114 S.Ct. 2364 (footnote omitted). As a corollary to this analysis, the Court stated, "the statute of limitations poses no difficulty while state challenges are being pursued, since the § 1983 claim has not yet arisen." Id. at 489, 114 S.Ct. 2364. Thus, the Court held that "a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90, 114 S.Ct. 2364.
 
 
 13
 However, not all state convictions prevent § 1983 actions from arising. The Court in Heck explained:
 
 
 14
 [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.
 
 
 15
 Id. at 487, 114 S.Ct. 2364 (footnotes omitted). Accordingly, in order to determine whether Covington's false arrest claim accrued at the time of the arrest or only when the prosecution against him on the charges relating to that arrest was dismissed, the question is whether "a judgment in favor of [Covington in the § 1983 action] would necessarily imply the invalidity of" any conviction or sentence that might have resulted from the prosecution of Covington resulting from the arrest. Heck, 512 U.S. at 487, 114 S.Ct. 2364.
 
 
 16
 Under New York law, "a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." Id. (citation omitted). Additionally, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Id. (quotation marks and citations omitted).
 
 
 17
 The inquiry as to whether a recovery on the § 1983 false arrest claim in this case would necessarily imply the invalidity of any conviction or sentence resulting from the criminal proceedings against Covington is inherently a factual one, as illustrated by Woods v. Candela, 13 F.3d 574 (2d Cir.1994)("Woods I "). In Woods, Joseph Candela, a New York State Trooper, had stopped the plaintiff's vehicle because it was similar to one that had been seen near the scene of two robberies and a recent larceny. Candela asked Woods if he had any weapons in the car. Woods replied that he kept a nightstick under the seat. Candela then searched the vehicle and found several items that matched the description of articles used in the robberies. Woods was then indicted in state court for robbery and criminal possession of a weapon. He moved to suppress the evidence found in his car search, but this motion was denied. Woods was subsequently convicted, but on appeal, his conviction was reversed on the grounds that the evidence should have been suppressed, since Candela had not had reasonable suspicion to detain and question Woods.
 
 
 18
 Woods then brought a 42 U.S.C. § 1983 suit against Candela in federal district court, alleging that Candela had violated his Fourth, Fifth, and Fourteenth Amendment rights. Woods later conceded that he had failed to state a cause of action for malicious prosecution, pursuing only his Fourth and Fifth Amendment claims for false arrest and the illegal search arising therefrom. The district court then dismissed those claims as time-barred by New York's three-year statute of limitations. On appeal, this Court affirmed the district court's dismissal. Woods I, 13 F.3d at 575-6.
 
 
 19
 Subsequent to Woods I, the Supreme Court decided Heck and then vacated our decision in Woods I, remanding the case to us for reconsideration in light of Heck. Woods v. Candela, 513 U.S. 801, 115 S.Ct. 44, 130 L.Ed.2d 5 (1994).
 
 
 20
 On remand, we analyzed the nature of the New York state court decision. We observed that the New York state decision had "reversed Woods' conviction and dismissed the indictment after ruling that his suppression motion should have been granted, due to defendant Candela's lack of a reasonable suspicion on which to detain and question Woods and thereafter search his vehicle." Woods v. Candela, 47 F.3d 545, 546 (2d Cir.1995). Following the reasoning of Heck, we held that Woods's § 1983 claim (based on his false arrest) did not accrue prior to the reversal of his conviction, and was therefore not time-barred, because, as made evident by the decision of the New York state court, "Woods's present Fourth and Fifth Amendment claims, which rest on the very same grounds, necessarily imply that his conviction was unlawful, and thus could not have been raised prior to the ... reversal of his conviction." Id. This Court, therefore, has already held that a Section 1983 claim which is grounded in false arrest does not arise (in some circumstances) until such time as a criminal proceeding has been terminated in the plaintiff's favor. Contrary to the assertions in the dissent, Woods was not bottomed on a malicious prosecution claim, but consisted only of false arrest claims-claims that would have undermined the integrity of Woods' convictions had he succeeded on them.
 
 
 21
 Although in Woods, the plaintiff's claims in fact rested on the same grounds as the reversal of his conviction in the criminal proceedings, we note that this result is not inevitable in cases involving § 1983 claims based on an unlawful arrest. See Washington v. Summerville, 127 F.3d 552, 556 (7th Cir.1997) ("[A] wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction."). Such a case might arise if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest. On the other hand, in a case where the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence. In the present case, we are unable to determine whether success on Covington's Section 1983 false arrest claim would necessarily imply the invalidity of a possible conviction resulting from the criminal proceedings instituted against him based on that arrest, as we have no information before us as to the nature of the evidence which might have been available against him in those proceedings. Accordingly, we remand the case to the district court to make this determination.
 
 
 22
 We wholly agree with the dissent's assertion that there is a distinction between malicious prosecution and false arrest claims. We also agree that causes of action for false arrest accrue at the time of the arrest. The dissent, however, ignores the fact that Woods II, following the dictates of Heck, held that a federal Section 1983 claim grounded in false arrest simply does not accrue so long as a recovery would impugn a criminal conviction. We are bound in this case by the holding in Woods II.
 
 
 23
 The dissent recognizes, at page 10, that the rationale for tolling the statute of limitations is to "avoid parallel litigation over the issues of probable cause and guilt ..." It goes on to state that "in this case there can be no possibility of creating two conflicting resolutions arising out of the same or identical transactions." That, of course, is true now that the criminal proceeding has been dismissed. So long as the criminal case remained pending, however, a parallel § 1983 case based upon a false arrest and wrongful search claim would create the distinct possibility of an inconsistent result if the prosecutor's evidence was dependent upon a valid arrest. That is the reason why the § 1983 cause of action could not accrue during the pendency of the criminal case.
 
 
 24
 Finally, the City Defendants argue that the analysis in Heck, which we applied in Woods, cannot be applied in this case because there was no actual conviction or judgment in Covington's state criminal proceedings, which were dismissed under New York's speedy trial requirement. It is true that Heck did not directly address the issue of the accrual of claims that, if successful, would necessarily imply the invalidity of a potential conviction on a pending criminal proceeding. However, we agree with the Third Circuit that the reasoning in Heck is applicable to such a case. See Smith v. Holtz, 87 F.3d 108 (3d Cir.), cert. denied, 519 U.S. 1041, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996); see also Washington, 127 F.3d at 556.
 
 
 25
 In Heck, the Court held that § 1983 actions, like civil tort actions, are not "appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486, 114 S.Ct. 2364. In order to protect against such collateral attack against state convictions or sentences, the Court required proof that the state conviction or sentence has been invalidated before a § 1983 action could arise. As the Third Circuit stated, "these concerns apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge." Smith, 87 F.3d at 113. The Third Circuit further explained:
 
 
 26
 If such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which Heck sought to avoid, there is no difference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.
 
 
 27
 Id.
 
 
 28
 It follows from this reasoning that if "success on [a § 1983] claim would necessarily imply the invalidity of a conviction in a pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist." Id. Accordingly, if, as we noted before, success on Covington's § 1983 claim would necessarily have implied the invalidity of any conviction which may have resulted from the state criminal proceedings relating to the arrest, then Covington's false arrest claim would not accrue until after that criminal prosecution was dismissed, and his false arrest cause of action under § 1983 would not now be time-barred.
 
 III. CONCLUSION
 
 29
 For the foregoing reasons, we vacate the dismissal and remand the case to the district court for further proceedings consistent with this opinion.
 
 
 30
 GLASSER, Judge, dissents.
 
 
 31
 I respectfully disagree with the conclusion reached by the majority and would affirm the decision of the district court which dismissed the plaintiff's § 1983 claim bottomed upon his false arrest for the reason that his action was commenced more than three years after his cause of action accrued and was thus barred by the statute of limitations.
 
 
 32
 The fundamental flaw in the application of Heck v. Humphrey 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) to this case lies in the failure to distinguish the basic but crucial difference between the tort of false imprisonment (of which false arrest is merely a variant) and the tort of malicious prosecution--a difference that "in this context has escaped the collective wisdom of many courts." 512 U.S. at 496, 114 S.Ct. 2364. At the outset, it is important to note that that portion of his § 1983 action bottomed upon malicious prosecution was properly dismissed and this appeal before us concerns only the dismissal of his false arrest claim.
 
 
 33
 Heck reiterated the Court's teaching "that 42 U.S.C. § 1983 creates a species of tort liability" and that "to determine whether there is any bar to [a § 1983] suit, we look first to the common law of torts" 512 U.S. at 483, 114 S.Ct. 2364.
 
 
 34
 It would be an affectation of legal research to cite a plethora of cases and the many treatises on the law of torts to confirm that the tort of false imprisonment is the unlawful detention or confinement of the plaintiff intentionally caused by the defendant. False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment. It is also generally required that the plaintiff be conscious of his detention or confinement. The interest sought to be protected by this tort is the interest each of us has to remain free from restraint of movement and is actionable under common law and the Fourth Amendment where the unlawful detention or confinement is intentionally caused regardless of whether a criminal prosecution is instituted thereafter. The cause of action accrues at the time of the detention or confinement as does the running of the statute of limitations. Day v. Morgenthau, 909 F.2d 75, 79 (2d Cir.1990) (as amended on rehearing), cert. denied, 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992) (day of alleged unlawful arrest was the day of accrual of plaintiff's claims contrary to plaintiff's contention that his claims accrued on the date of his arraignment). "[D]amages for that claim cover the time of detention up until the issuance of process or arraignment and not more." 512 U.S. at 484, 114 S.Ct. 2364 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed.1984)).
 
 
 35
 Heck holds that a damages claim that "necessarily demonstrates the invalidity of a conviction" may not be brought while the conviction stands. 512 U.S. at 481-82, 114 S.Ct. 2364. A claim for damages based upon a false arrest does not necessarily impugn the validity of a conviction should a prosecution be instituted.[1] That this is so becomes clear by considering the following illustrations. Assume, for example, an arrest is made and no statement is taken or evidence seized incident to it. A common law action for false arrest or an action pursuant to § 1983 is thereafter commenced and a verdict rendered in favor of the plaintiff. An indictment is, however, thereafter duly obtained and the plaintiff is convicted. The validity of the conviction is not at all impugned by the result of the action for false arrest. In Gonzalez v. Entress, 133 F.3d 551 (7th Cir.1998) Judge Easterbrook stated it thus at 553: "Wrongful invasions of property are actionable ... under state law and the fourth amendment, no matter what happens to the criminal prosecution. Suppose a person says something like 'I was arrested without probable cause and spent a night in jail until my wife came up with bail money.' That injury is compensable whether or not the person is later convicted--indeed, whether or not he is later prosecuted. The rationale of cases such as Allen v. McCurry, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), which hold that a criminal prosecution does not bar civil search and seizure claims under principles of preclusion (collateral estoppel or res judicata) is that a search can be unlawful but the conviction entirely proper, or the reverse, and that some injury from a violation of the fourth amendment is unrelated to conviction."
 
 
 36
 Assume further, that evidence was seized or a statement taken incident to the unlawful arrest. The false arrest or § 1983 claim is immediately actionable even if the prosecutor never tries to use the evidence or statement at trial. And even if the evidence or statement is used at trial, the validity of the subsequent conviction would not necessarily be impugned by a verdict returned in favor of the plaintiff in the civil action. The Court recognized that in Heck when it wrote at 487, n.7 as follows: "... a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, ... and especially harmless error, ... such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful" (citation omitted). See also, Kelley v. Myler, 149 F.3d 641 (7th cir.1998) which is on all fours with this case; Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir.1996), cert. denied. 519 U.S. 1113, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997) (holding that a § 1983 unlawful arrest claim accrued on a day of arrest because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction."); Washington v. Summerville, 127 F.3d 552, 556 (7th Cir.1997), cert. denied --- U.S. ----, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998) (statute of limitations began to run when plaintiff "knew or should have known that his constitutional rights had been violated--the date of his arrest."); Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir.1995) ("It is well established that a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest."); Copus v. City of Edgerton, 151 F.3d 646, 649 (7th Cir.1998) ("The point is that it is possible for an individual to be properly convicted though he is unlawfully arrested, or his home unlawfully searched. The remedy for those constitutional violations is a civil action under § 1983 for money damages.") (emphasis added). It is only when the conviction and imprisonment are themselves constitutional wrongs, that Heck postpones the accrual of the claim until the conviction has been set aside. The point was made with exquisite clarity in Antonelli v. Foster, 104 F.3d 899, 901 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 104, 139 L.Ed.2d 58 (1997) by Judge Posner as follows:
 
 
 37
 "We think it worth noting, to dispel any possible confusion, the difference between a suit premised as here on the invalidity of confinement pursuant to some legal process, whether a warrant, indictment, information, summons, parole revocation, conviction or other judgment, ... and a suit that complains of official misconduct unrelated to legal process--an unconstitutional arrest without a warrant, the gratuitous beating of the arrested person, .... In none of the [cited] cases in the second category official misconduct unrelated to legal process--is the unlawfulness of the plaintiff's being confined pursuant to legal process an implicit or explicit ingredient of his case. The principle of Heck is therefore inapplicable to those cases (as Heck itself makes clear, see 512 U.S. at 486-87, nn 6, 7, 114 S.Ct. 2364 ...)."
 
 
 38
 The § 1983 claim upon which Heck and the cases which apply it is premised upon the common law tort of malicious prosecution which, although often accompanying an action for false arrest is a distinctly different tort and the distinction between the two is often confused. See W. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed.1984). The interest sought to be protected by this tort is the interest each of us has not to be sued or prosecuted unjustly. The elements of this tort are: (1) the commencement or continuance of a criminal proceeding, (2) without probable cause, (3) maliciously, (4) termination of the prosecution favorable to the plaintiff. See, e.g. DiBlasio v. The City of New York, 102 F.3d 654 (2d Cir.1996). Heck acknowledged the significant distinction between the torts of false arrest and malicious prosecution in 512 U.S. at 484, 114 S.Ct. 2364:
 
 
 39
 "The common-law cause of action for malicious prosecution provides the closes analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. 'If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but no more.' W. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed.1984). But a successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.' " (emphasis added)
 
 
 40
 It is precisely because an essential element that must be alleged and proved in an action for malicious prosecution is termination of the prior criminal proceeding favorable to the accused that the Court observed that "[w]e think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." Heck, 512 U.S. at 486, 114 S.Ct. 2364.
 
 
 41
 The portions of the opinion upon which the majority relies and is set out at of their opinion are thus addressed to a § 1983 claim bottomed upon a claim for an allegedly unconstitutional conviction or imprisonment--a conviction or imprisonment pursuant to some legal process which must first be terminated favorable to the plaintiff. That requirement "precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.... Furthermore, 'to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit'." Id. at 484, 114 S.Ct. 2364.
 
 
 42
 As has been stated above, the appeal before this court is from the dismissal of the false arrest claim for damages which was commenced long after the cause of action accrued and at a time when the criminal prosecution was no longer pending and was properly dismissed. Thus, the "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff [and] the action should be allowed to proceed, in the absence of some other bar to the suit." Heck at 487, 114 S.Ct. 2364. The statute of limitations was correctly held by Judge Nickerson to be a bar to the suit for false arrest and his determination is entirely consistent with Heck v. Humphrey and should be affirmed. Cases such as Smith v. Holtz, 87 F.3d 108 (3d Cir.) cert. denied, 519 U.S. 1041, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996) upon which the majority relies are cases in which plaintiff sought damages from his unlawful conviction and confinement--for malicious prosecution--and are therefore not applicable.
 
 
 43
 It is important to note that in cases such as Smith v. Holtz the damages sought are for an unlawful conviction and confinement, unlike this case, in which the plaintiff seeks damages for false arrest only. The validity of an outstanding criminal judgment may be implicated in cases such as Smith but not in this one for the reason that where damages are sought for conviction and confinement, the action is for malicious prosecution and not for false arrest. That distinction was clearly explicated in Heck, at 484, 114 S.Ct. 2364 thus:
 
 
 44
 "The common-law cause of action for malicious prosecution provides the closes analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. 'If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but no more.'.... But a successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.' " (emphasis added and citations omitted)
 
 
 45
 After acknowledging that "a wrongful arrest claim does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction" Washington v. Summerville, supra. The majority observe that "Such a case might arise if there were independent evidence upon which a conviction could be obtained that was not in any way tainted by the unlawful arrest. In the present case, we are unable to determine whether success of Covington's false arrest claim would necessarily imply the invalidity of a possible conviction resulting from the criminal proceedings instituted against him based upon that arrest, as we have no information as to the nature of the evidence which might have been available against him in those proceedings. Accordingly, we remand the case to the district court to make this determination." The remand would thus require the district court to ascertain whether, in order to obtain a conviction, the state would have to prove that Covington's arrest was valid.
 
 
 46
 The remand the majority would direct would place upon the district court an impossible and totally unrealistic burden. It would require that court to determine and assess the strength of all the evidence available to the state, to determine whether a motion to suppress evidence or statements based upon an alleged unlawful arrest or a claimed unreasonable search should be denied because any one or more of many exceptions would permit the evidence to be received, e.g., that the evidence seized was in plain view; would have been inevitably discovered; was obtained during an inventory search; was subject to a good faith exception; was seized under exigent circumstances; when the statement was made the interrogation was no longer custodial; or whether the state had evidence entirely independent of an arrest or search that would have been enough to obtain a conviction such as the testimony of an eye witness or informant. It is that to which the Supreme Court was referring in 512 U.S. at 484 n. 7, 114 S.Ct. 2364.
 
 
 47
 I would emphasize that the action pursuant to § 1983 predicated upon the alleged false arrest, commenced more than three years after that cause of action accrued, was plainly time-barred and for reasons already stated would not, in any event, have impugned a criminal conviction as a reading of the following observation in Heck teaches:
 
 
 48
 Thus, when a prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the validity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed even in the absence of some other bar to the suit. (emphasis mine)
 
 
 49
 The rationale for tolling the statute of limitations is to "avoid parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transactions." Heck at 484, 114 S.Ct. 2364. In this case there can be no possibility of creating two conflicting resolutions arising out of the same transaction, nor is there any possibility of "a collateral attack on a conviction through the vehicle of a civil suit." Heck at 484, 512 U.S. 477. Clearly, the rationale of tolling the statute does not exist in this case.
 
 
 50
 Woods v. Candela, 47 F.3d 545 (2d Cir.1995) by which the majority believes itself to be bound does not require a reversal of the district court for the reason that the action there was for malicious prosecution. The per curiam opinion there correctly concludes: "Therefore, under Heck, Woods's § 1983 cause of action for damages arising from Fourth and Fifth Amendment violations did not accrue before that date [the Appellate Division's reversal of his conviction.]. Consequently, Woods's suit was not barred by the statute of limitations." The reversal of his conviction was a pre-requisite to his malicious prosecution claim because an element of that claim was favorable termination.[2]
 
 
 51
 It is also significant to note that Woods took particular note of the observation in Heck which I have already alluded to and regard as dispositive. In 47 F.3d at 546, the Court in Woods wrote:
 
 
 52
 In Heck, the Supreme Court held that "A § 1983 cause of action for damages attributable to an unconstitutional conviction of sentence does not accrue until the conviction or sentence has been invalidated." Heck, 512 U.S. at 490, 114 S.Ct. at 2374. The Court exempted from this rule actions that "even if successful, would not necessarily imply that the plaintiff's conviction was unlawful." Id. at n. 7, 114 S.Ct. at 2372 n. 7 ..., such as an action founded on an unlawful search whose illegality would not affect the validity of the conviction. (emphasis mine)
 
 
 53
 I emphasize "conviction or sentence" because those words manifestly relate to the malicious prosecution pre-requisite of favorable termination. I have already indicated that when Covington's action was commenced there was no criminal conviction that would or ever would be invalidated.
 
 
 54
 For all of the foregoing reasons, I would affirm the decision of the district court.
 
 
 
 *
 The Honorable Warren W. Eginton, Senior United States District Court Judge for the District of Connecticut, sitting by designation
 
 
 **
 The Honorable I. Leo Glasser, Senior United States District Court Judge for the Eastern District of New York, sitting by designation
 
 
 ***
 Pursuant to 28 U.S.C. § 46(b) and an order of the chief judge of this court certifying a judicial emergency, this case was heard by an emergency panel consisting of one judge of this court and two judges of the United States District Court sitting by designation
 
 
 [1]
 Plaintiff's complaint was actually filed in the district court on July 18, 1994. However, as the district court pointed out, a prisoner's complaint is deemed "filed" on the date the complaint is delivered to prison officials for transmittal to the court, which in this case was June 2, 1994. See Covington v. City of New York, No. 94 CV 3382, 1995 WL 322222, at * 2 (E.D.N.Y. May 23, 1995). See also Dory v. Ryan, 999 F.2d 679, 682 (2d Cir.1993)
 
 
 [2]
 Hereinafter, all references to Covington's complaint are to his amended complaint
 
 
 [1]
 Houston v. Lack, 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) teaches that a prisoner's complaint is deemed filed on the date it is delivered to his jailer who, in effect, becomes the clerk of the district court. In this case, that date was June 2, 1994. The criminal charges against him were dismissed on June 10, 1991, and had that dismissal satisfied the favorable termination requirement of an action for malicious prosecution, his § 1983 action would have been timely. His cause of action for false arrest, however, accrued upon his arrest, February 17, 1990, and his § 1983 action bottomed upon that alleged wrong was time barred when he filed his complaint on June 2, 1994, which was more than three years after that cause of action accrued
 
 
 [2]
 On page 123 the majority write that "Woods later conceded that he had failed to state a cause of action for malicious prosecution, pursuing only his Fourth and Fifth Amendment claims for false arrest and the illegal search arising therefrom." The words that are underscored do not appear in Woods v. Candela, 13 F.3d at 575 nor do such words appear at 13 F.3d at 576
 Similarly the majority's text at p. 123 that "Following the reasoning of Heck, we held that Woods's § 1983 claim (based on his false arrest ) did not accrue prior to the reversal of his conviction" gratuitously add the words in parenthesis which are not to be found in Woods II, 47 F.3d 545.
 The damages that would be available to Woods upon the favorable termination of his criminal case would include the damages sustained for his false arrest as Heck acknowledges at 512 U.S. at 484, 114 S.Ct. 2364, viz:
 But a successful malicious prosecution plaintiff may recover, in addition to general damages, "compensation for any arrest or imprisonment ...." (emphasis mine)
 That, I submit, is the reading that Woods II supports.