NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4145
_____

CHRISTOPHER MORRIS,
                              Appellant,
v.

ATTORNEY GENERAL, Peter Verniero;
GLYNN MOORE, Trooper; MARC STEPHENS, Trooper;
FIRST ASSISTANT ATTORNEY GENERAL, Paul Zoubek;
SUPERINTENDENT OF NEW JERSEY STATE POLICE,
Col. Carl A. Williams


_____


On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 3:03-cv-1001)
District Judge: Honorable Anne E. Thompson
_____


Argued on November 15, 2011

BEFORE: FUENTES and CHAGARES, Circuit Judges, and RESTANI, International
Trade Judge[*]

(Opinion Filed: December 6, 2011)


Thomas Bruno          (**ARGUED**)
Abramson & Denenberg, P.C.
1315 Walnut Street, 12th Floor
Philadelphia, PA 19107

_____

[*] Honorable Jane A. Restani, International Trade Judge of the United States Court of
International Trade, sitting by designation.

*Attorney for Appellant*

John C. Connell
John P. Kahn
Maureen T. Coghlan
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, New Jersey 08033

Mary E. Wood        **(ARGUED)**
Office of the Attorney General of New Jersey
P.O. Box 112
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625

*Attorneys for Appellees*

_____

OPINION OF THE COURT
_____

FUENTES, <u>Circuit Judge</u>.

Christopher Morris appeals from the District Court's grant of summary judgment to the Appellees on his malicious prosecution and selective prosecution claims. While he recognizes that, in order to bring a malicious prosecution claim, he must show that his criminal case was "favorably terminated," he argues that the District Court held him to too high of a standard in resolving this question. Morris also argues that he put forward sufficient evidence from which a jury could infer that he had been selectively prosecuted.

For the reasons expressed below, we will affirm the District Court's grant of summary judgment to the Appellees.[1]

I.

Because we write primarily for the benefit of the parties, we set forth only the facts and history that are relevant to our conclusion. On June 1, 1997, Christopher Morris, an African American male, was stopped by two New Jersey State Troopers, Glynn Moore and Marc Stephens, on the New Jersey Turnpike. The Troopers testified that they stopped Morris because he was speeding. Moreover, because Morris' car had tinted windows, the Troopers say that it was not until the car came to a stop that they were able to observe that Morris and his passenger, Andre London, were African American. The Troopers testified that they became suspicious because Morris and London made furtive movements and appeared nervous, among other reasons. According to the Troopers, Morris and London were subjected to *Terry* pat down searches, and were each discovered to be carrying a large, duct-taped package of cocaine. Morris now disputes this version of events, and instead alleges that the Troopers searched him three times and found nothing. It is his claim that the Troopers planted the cocaine on him, and he insists that he had no contraband on his person or in his car, except for a small amount of marijuana.

Morris was charged with possession with intent to distribute a Controlled Dangerous Substance. He filed a Motion to Suppress the cocaine on the ground that the

_____

[1]The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and original jurisdiction pursuant to 28 U.S.C. § 1343. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

pat-down search was illegal and the contraband was illegally seized. He did not, at that time, raise a claim that the cocaine had been planted on him by the Troopers. His motion was denied.

Morris' arrest and criminal prosecution came at a time when the New Jersey State Police were under scrutiny for using racial profiling in their traffic stops. In 1999, the New Jersey Attorney General's office published an interim report following an investigation into the racial profiling allegations. The Attorney General concluded that the State Police did not have an official policy of racial profiling, but he nevertheless found widespread de facto discrimination by officers who racially profiled motorists on the Turnpike. Morris filed a Motion for Reconsideration of the suppression issue based on this report, but this motion was also denied. Finally, Morris filed a Motion to Reopen the Discovery based on newly discovered evidence of racial profiling. This motion was denied, and Morris' criminal case went to trial. His first trial was declared a mistrial, however, after jurors were found discussing the matter during lunch.

During jury selection for Morris' second trial, the judge became aware of three Appellate Division decisions that had been issued concerning discovery in cases allegedly involving racial profiling. The trial judge thus granted Morris' Motion to Reopen Discovery. Morris' case was referred to a special proceeding to determine whether pending criminal cases such as his could go forward. On February 26, 2001, the Attorney General moved to dismiss 76 pre-trial cases being reviewed, including Morris', because it was too difficult to "'discern which cases involve[d] intentional targeting of minorities when other drug courier profile-related factors existed to justify the

stop.'" *Morris v. Verniero*, No. 03-1001, 2008 WL 4330179 at *3 (D.N.J. Sept. 17, 2008). Morris' indictment was dismissed on March 23, 2001.

On March 7, 2003, Morris filed this civil rights action against several defendants, including Troopers Moore and Stephens, Attorney General Peter Verniero, First Assistant Attorney General Paul Zoubeck, and Colonel Carl Williams. He alleged claims arising under 42 U.S.C. § 1983 for malicious prosecution and selective prosecution. The Appellees filed a Motion for Summary Judgment on statute of limitations grounds, but District Judge Thompson denied this motion. The Appellees then filed a Second Motion for Summary Judgment, addressing the substantive issues in the case. Judge Thompson granted this motion and dismissed the case.

This notice of appeal followed.

## II.

We exercise plenary review over the District Court's grant of summary judgment.

> Summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).

### A. Malicious Prosecution

To prove malicious prosecution a plaintiff must show, among other things, that that "the defendants initiated a criminal proceeding" and that this "criminal proceeding

ended in the plaintiff's favor." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). As we have noted, the favorable termination requirement serves "to avoid 'the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id.* at 187 (quoting *Heck v. Humphrey*, 512 U.S. 477 (1994)). In keeping with this purpose, "we have held that a prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element." *Id.* While Morris is correct that "[a]ctual innocence is not required for a common law favorable termination," *Smith v. Holtz*, 87 F.3d 108, 113 (3d Cir. 1996), the termination must at least be indicative of Morris' innocence.

As we have stated, "[a] plaintiff may attempt to indicate his innocence by demonstrating that his prior criminal proceeding terminated . . . [due to] the formal abandonment of the proceedings by the public prosecutor . . . ." *Kossler* 564 F.3d at 187. Morris argues that the Attorney General formally abandoned his case, thereby indicating his innocence of the crimes charged. However, we do not consider all administrative decisions to abandon prosecutions to be favorable terminations. *See, e.g.*, *Donahue v. Gavin*, 280 F.3d 371 (3d Cir. 2002) (holding that a prosecutor's decision to dismiss a case in the interest of judicial economy did not constitute a favorable termination).

In Morris' case, we cannot say that the dismissal of his case constituted a favorable termination because it was not indicative of his innocence of the crimes

6

charged.  The Attorney General clearly stated that he did not dismiss Morris' indictment because he thought Morris was innocent.  On the contrary, in his public announcement regarding the dismissal, the then-Attorney General said, "'let's be clear; the defendants in these cases may have prevailed in their motions to suppress, but they are criminals nonetheless.  All were carrying some form of contraband for distribution in communities in this and other states.'"  Appellees' Br. 16.

Nor can we say that Morris' assertion that the cocaine was planted on him creates a genuine issue of material fact as to whether his case was favorably terminated.  There are many reasons to discredit Morris' assertion, first raised almost six years after his initial arrest, that he did not possess the cocaine.[2]  Among these are the fact that the state court judge who heard testimony pursuant to Morris' suppression motion found Trooper Moore to be "truthful, trustworthy, persuasive and detailed" and saw "no reason to doubt his testimony" that he and his partner recovered cocaine from Morris' person.  R. 521.  We have noted that, "if the nonmoving party's evidence, when viewed in the context of all of the evidence, could not be credited by a rational juror, summary judgment may be granted." *U.S. v. 717 S. Woodward St.*, 2 F.3d 529, 533 (3d Cir. 1993).  Because no rational juror could have credited Morris' belated assertion that the drugs were planted, the District Court properly granted summary judgment to the Appellees.

---

[2] Morris' counsel submitted a letter to this Court after oral argument in which he stated that Morris actually did raise his claim that the drugs were planted on him during his criminal trial.  Specifically, counsel pointed us to two questions that defense counsel asked at trial during her cross examination of Trooper Moore.  However, these two isolated questions are insufficient to show that Morris raised a claim that the drugs were planted on him at that time.

B. Selective Prosecution

"A decision to prosecute is selective and violates the right to equal protection when it is made on a discriminatory basis with an improper motive." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989). To establish a claim of selective prosecution, a plaintiff must, among other things, "provide evidence that persons similarly situated have not been prosecuted." *Id.* Morris actually "acknowledges in this case that he did not produce evidence to 'show that similarly situated individuals of a different race were not prosecuted.'" Appellant's Br. 48. However, he believes that his claim should succeed nonetheless because he "produced ample statistical evidence of bias." *Id.*

The District Court properly concluded that this evidence was unavailing. Judge Thompson noted that the statistical evidence, "at best, establish[es] that the New Jersey State Police maintained a *de facto* policy of racial profiling in the course of effecting traffic stops." *Morris v. Verniero*, No. 03-1001, 2008 U.S. Dist. LEXIS 71187 at *16 (D.N.J. Sept. 12, 2008). She added that the statistical evidence did not "provide insight as to whether similarly situated suspects of a different race than [Morris] were prosecuted when violations of the drug laws were found." *Id.* Morris' selective prosecution claim fails because he did not prove this necessary element.

III.

For the reasons stated above, we will affirm the District Court's grant of summary judgment to the Appellees.