210 F.3d 1008 (9th Cir. 2000)
 WILLIAM E. HARVEY, Plaintiff-Appellant,
v.
DAVID F. WALDRON, individually and in his official capacity as an investigator for the Montana Department of Revenue; STATE OF MONTANA, DEPARTMENT OF REVENUE; JESSE JOHNSON, JR.,individually and in his official capacity as a Detective in the Billings Police Department; DAVE COMFORT, individually and in his official capacity as a Detective in the Billings Police Department TERRY ST. JOHN, individually, and in his official capacity as a Detective in the Billings Police Department; BILLINGS, MONTANA, POLICE DEPARTMENT; PEDRO HERNANDEZ, individually, and in his official capacity as Justice of the Peace for Yellowstone County; DALE R. MRKICH, individually, and in his official capacity as Deputy County Attorney for Yellowstone County, Montana; YELLOWSTONE COUNTY, MONTANA; CITY OF BILLINGS, MONTANA, Defendants-Appellees.
 No. 98-36112
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Submitted February 16, 2000[1]
Decided April 25, 2000
 
 [Copyrighted Material Omitted]
 COUNSEL: William E. Harvey, Pro per, Littleton, Colorado, for the plaintiff-appellant.
 Randall G. Nelson, Nelson Law Firm, Billings, Montana; Casey Heitz and Thomas D. Gai, Deputy Yellowstone County Attorneys, Billings, Montana, for the defendants-appellees.
 Appeal from the United States District Court for the District of Montana; Jack D. Shanstrom, District Judge, Presiding. D.C. No. CV-97-00065-JDS
 Before: Stephen Reinhardt, David R. Thompson, and Thomas G. Nelson, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 William Harvey appeals pro se the district court's dismissal of his 42 U.S.C. S 1983 action, alleging the City of Billings, the County of Yellowstone, Justice of the Peace Pedro Hernandez, and various individual officials violated his constitutional rights by illegally seizing and permanently depriving Harvey of gaming devices found on his property. We have jurisdiction under 28 U.S.C. S 1291. We affirm in part and reverse in part.
 
 I.
 
 2
 Because we are reviewing the district court's dismissal on the pleadings of Harvey's S 1983 action, we assume the following facts, derived from Harvey's complaint, to be true. See Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998).
 
 
 3
 On November 23, 1988, defendants David F. Waldron, an investigator for the Montana Department of Revenue; and Jesse Johnson, Dave Comfort and Terry St. John, detectives with the Billings City Police Department, entered the Billings Trading Company, an antique business owned and operated solely by Harvey. These defendants entered Harvey's place of business without invitation or a search warrant despite the fact that the business was not yet open to the public and, over Harvey's protests, seized approximately twenty-five gaming devices. These gaming devices, which were more than twenty-five years old, were antiques and were not used for gambling. Harvey was subsequently charged in a Yellowstone County court with illegal possession of gaming devices in violation of Montana Code Annotated S 23-5-153 (1988).[2]
 
 
 4
 On August 7, 1992, while charges were still pending against Harvey, Yellowstone County (the "County") moved the County Justice Court for leave either to destroy the seized gaming devices or to donate the devices to a museum. Harvey was not given notice of this motion. On August 11, 1992, Justice of the Peace Pedro Hernandez granted the County's motion and ordered the devices either destroyed or donated to a museum. The County donated the seized gaming devices to the City of Billings (the "City") on August 11, 1992. In late August or early September 1992, the Deputy County Attorney assured Harvey's attorney that the seized gaming devices would be returned to Harvey, despite the fact that the County had already given the gaming devices to the City.
 
 
 5
 On December 6, 1994, the County dismissed its charges against Harvey. Harvey was not, however, notified of the dismissal until May 1995. On June 2, 1995, Harvey moved the justice court for return of the seized gaming devices. On June 9, 1995, the justice court denied the motion and informed Harvey that the devices had been given to the City. In June 1995, Harvey also wrote the Deputy County Attorney and requested that his property be returned. The County Attorney also informed Harvey that the property could not be returned because it had been given away. Harvey did not know, prior to June 1995, that the seized gaming devices were no longer in the possession of the County.
 
 
 6
 Harvey filed the present action on May 19, 1997, claiming that the defendants violated his constitutional right to be free from unreasonable searches and seizures when they illegally seized his gaming devices in November 1988; and violated his due process rights when they permanently deprived him of the gaming devices without notice, an opportunity to be heard and just compensation. On July 8, 1997, the district court dismissed defendant Judge Hernandez, finding Judge Hernandez absolutely immune from suit under the doctrine of judicial immunity,[3] and directed Harvey to file an amended complaint.
 
 
 7
 After Harvey filed an amended complaint, the remaining defendants moved for dismissal or judgment on the pleadings. The district court granted the motions in an order entered on October 13, 1998, holding that Harvey's claims were barred by the applicable statute of limitations. On appeal, Harvey challenges both the district court's July 8, 1997, dismissal of Judge Hernandez and the district court's October 13, 1998, dismissal of the remaining defendants.
 
 II.
 
 8
 The district court dismissed Judge Hernandez from the lawsuit based on its finding that Judge Hernandez was entitled to absolute judicial immunity. Harvey contends that Judge Hernandez acted without either personal or subject matter jurisdiction and is not, therefore, entitled to judicial immunity. We review the question of judicial immunity de novo . See Moore v. Brewster, 96 F.3d 1240, 1243 (9th Cir. 1996).
 
 A. Sufficiency of Notice of Appeal
 
 9
 As a threshold matter, the defendants argue that because Harvey did not specifically list on his notice of appeal the July 8, 1997, order in which the district court dismissed Judge Hernandez,[4] Harvey's appeal of the dismissal of Judge Hernandez is barred by Federal Rule of Appellate Procedure 3(c) (requiring notice of appeal to "designate the judgment, order, or part thereof being appealed"). We disagree.
 
 
 10
 "An appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment." United Ass'n of Journeymen & Apprentices v. Bechtel Constr. Co., 128 F.3d 1318, 1322 (9th Cir. 1997). The July 8, 1997, order dismissing Judge Hernandez was clearly an "earlier, non-final order[ ]." Id.; see WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136-37 (9th Cir. 1997) (en banc) (holding that dismissal with leave to amend is not a final order); Pachick v. Kensington Publ'g Corp., 743 F.2d 675, 677 (9th Cir. 1984) (per curiam) (holding that dismissal of some, but not all, of the defendants who had been served with complaint is not a final order). To preserve his right to appeal the dismissal of Judge Hernandez, Harvey did not need to list Judge Hernandez in his second amended complaint, nor did he need to specifically list the July 8, 1997, order in his notice of appeal. Rather, when Harvey appealed the district court's October 13, 1998, final judgment and order, he drew into question all of the court's earlier, non-final orders, including the July 8, 1997, non-final order dismissing Judge Hernandez. See United Ass'n of Journeymen, 128 F.3d at 1322.
 
 
 11
 B. Applicability of Doctrine of Judicial Immunity
 
 
 12
 "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." Pierson v. Ray, 386 U.S. 547, 553-554 (1967). This "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. " Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted).
 
 
 13
 Harvey admits that Judge Hernandez's actions "might have been judicial in nature," but contends that Judge Hernandez is not entitled to immunity because he "acted in complete absence of jurisdiction" when he ordered the disposal of Harvey's property without notice and a hearing. We disagree.
 
 
 14
 The Supreme Court has clearly held that as long as a judge has jurisdiction to perform the "general act" in question, he or she is immune "however erroneous the act may have been, . . . however injurious in its consequences it may have proved to the plaintiff" and irrespective of the judge's motivation. Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985); see Stump v. Sparkman, 435 U.S. 349, 356 (1978) (holding that because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge" (citations, quotations and ellipses omitted)).
 
 
 15
 The "general act" which Judge Hernandez was performing in this case--the issuance of an ex parte order to destroy contraband at the request of the county--is a function that Judge Hernandez has jurisdiction to perform. Judge Hernandez is therefore immune from liability for the act of issuing the order, however erroneous the act may have been, however injurious the consequences of the act may have been to Harvey and irrespective of Judge Hernandez's claimed motivation. See Cleavinger, 474 U.S. at 199-200. The district court's dismissal of the claim against Judge Hernandez based on judicial immunity was thus proper.
 
 III.
 
 16
 The district court dismissed Harvey's second amended complaint based on its determination that the statute of limitations had run on all of Harvey's claims. Harvey contends that his claims did not accrue until less than two years prior to the time that he filed his lawsuit, and thathis claims are therefore timely. We review de novo whether the statute of limitations has run. See Cabrera v. City of Huntington Park , 159 F.3d 374, 378 (9th Cir. 1998).
 
 
 17
 The length of the limitations period for S 1983 actions is governed by state law. Wilson v. Garcia, 471 U.S. 261, 269 (1985). In Montana, the limitations period for tort actions for the recovery of damages for personal injuries, and therefore for S 1983 actions, see Wilson, 471 U.S. at 276, is three years after the action "accrues." See Mont. Code Ann. S 27-2204(1); Hando v. PPG Industries, Inc., 771 P.2d 956, 961 (Mont. 1989); Bennett v. Dow Chemical Co., 713 P.2d 992, 994 (Mont. 1986). The "accrual" of a S 1983 action is determined by federal law. See Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999).
 
 
 18
 In his complaint, Harvey seeks recovery under S 1983 for both the seizure of his property in November 1988, and the permanent deprivation of his property resulting from the County's disposal of his property in August 1992. Harvey does not dispute that the present action, filed on May 19, 1997, was filed more than three years after both the seizure of the property and the disposal of the property. He contends, however, that his claims did not "accrue," and that the statute of limitations did not, therefore, begin to run, until June 1995, when he learned that the County's criminal charges against him had been dismissed and that the property had been disposed of. In support of his contention, Harvey relies on Heck v. Humphrey, 512 U.S. 477 (1994).[5]
 
 A. Heck v. Humphrey
 
 19
 Under the Court's holding in Heck, a S 1983 action that would call into question the lawfulness of a plaintiff's conviction or confinement is not cognizable, and does not, therefore, accrue until and unless the plaintiff can prove that his conviction or sentence has been reversed on direct appeal. See id. at 486-87. Thus, when a plaintiff files a S 1983 action, the court must determine whether "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. In this situation, the S 1983 action "does not accrue until the conviction or sentence has been invalidated." Id. at 489-90. On the other hand, if "the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. at 487 (footnote omitted).
 
 
 20
 Because Heck "applies only to those claims that would necessarily imply the invalidity of any conviction that might have resulted from prosecution of the dismissed . . . charge," we must assess each of Harvey's claims individually to determine whether it has yet accrued, and if so, when it accrued for purposes of applying the statute of limitations. Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999); see also Cabrera, 159 F.3d at 380 ("The accrual of a S 1983 claim depends upon the substantive basis of the claim.").
 
 B. Warrantless Search & Seizure Claim
 
 21
 1. Whether Heck applies only to "actual" rather than "potential" convictions.
 
 
 22
 As a threshold matter, the defendants argue that Heck is inapplicable to the present case because Harvey was never convicted. Although this circuit has not addressed this issue, several other circuits have held that Heck applies to not only convictions, but also to pending and dismissed charges. See, e.g., Beck, 195 F.3d at 557 ("Heck precludes S 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges. Such claims arise at the time the charges are dismissed." (citations omitted)); Shamaeizadeh v. Cunigan, 182 F.3d 391, 397-98 (6th Cir. 1999); Covington v. City of New York, 171 F.3d 117, 124-25 (2d Cir. 1999); Uboh v. Reno, 141 F.3d 1000, 1006-07 (11th Cir. 1998); Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997); Smith v. Holtz, 87 F.3d 108, 113 (3d Cir. 1996).
 
 
 23
 As the Third Circuit explained in Smith, the express objectives of the Court's holding in Heck--to preserve consistency and finality, and to prevent collateral attacks on a conviction via a civil lawsuit--are equally applicable "to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending criminal charge. " Smith, 87 F.3d at 113.
 
 
 24
 A claim by a defendant in an ongoing criminal pros ecution which necessarily challenges the legality of a future conviction on a pending criminal charge lies at the intersection of the federal habeas corpus stat ute and the Civil Rights Act of 1871. If such a claim could proceed while criminal proceedings are ongo ing, there would be a potential for inconsistent deter minations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which Heck sought to avoid, there is no dif ference between a conviction which is outstanding at the time the civil rights action is instituted and a potential conviction on a pending charge that may be entered at some point thereafter.
 
 
 25
 Id. (citations omitted).
 
 
 26
 Moreover, as the Eleventh Circuit explained in Uboh, to hold otherwise could result in permanently depriving a plaintiff from filing any action at all:
 
 
 27
 Had he filed the action simultaneously when he dis covered the defendants' alleged misdeeds, his case would have been dismissed under Heck; had he waited to file the action (as he did) until the criminal proceeding was resolved in his favor, the action would have been dismissed under the statute of limi tations. We decline to adopt a construction of either the complaint or the applicable law that permanently would preclude the plaintiff from filing any action at all. Rather, we conclude that the complaint in this case does state a cause of action for malicious prose cution, that the prosecution did terminate in favor of the accused, and that had the action been filed at the time these events accrued--as proposed by the defendants--Heck would have barred its continua tion.
 
 
 28
 Uboh, 141 F.3d at 1006-07.
 
 
 29
 We agree with the Second, Third, Sixth, Seventh, Tenth and Eleventh Circuits and hold that Heck applies to pending criminal charges, and that a claim, that if successful would necessarily imply the invalidity of a conviction in a pending criminal prosecution, does not accrue so long as the potential for a conviction in the pending criminal prosecution continues to exist.
 
 
 30
 2. Whether Heck applies to Harvey's illegal search and seizure claim.
 
 
 31
 Neither this court nor the Supreme Court has explicitly addressed the applicability of Heck to S 1983 claims alleging damages attributable to an allegedly illegal search and seizure of property.[6]However, the Supreme Court stated in footnote seven in its decision in Heck that
 
 
 32
 a suit for damages attributable to an allegedly unrea sonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the S 1983 plaintiff's still outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a S 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.
 
 
 33
 Heck, 512 U.S. at 487 n.7 (citations omitted).
 
 
 34
 There is a split in the circuits as to how Heck 's footnote seven should be interpreted. The Seventh, Eighth, Tenth and Eleventh Circuits have held that footnote seven creates a general exception to Heck for S 1983 Fourth Amendment unreasonable search and seizure claims. See, e.g., Beck, 195 F.3d at 559 n.4 (noting that "use of illegally obtained evidence does not, for a variety of reasons, necessarily imply an unlawful conviction," with the caveat, however, that the case before it was not one of those "rare situation[s] . . . where all evidence was obtained as a result of an illegal arrest"); Copus v. City of Edgerton, 151 F.3d 646, 648 (7th Cir. 1998) (interpreting Heck's footnote seven to "mean that Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward"); Simmons v. O'Brien, 77 F.3d 1093, 1095 (8th Cir. 1996) (holding that "[b]ecause harmless error analysis is applicable to the admission at trial of coerced confessions, judgment in favor of Simmons on this S 1983 action challenging his confession will not necessarily demonstrate the invalidity of his conviction"); Datz v. Kilgore , 51 F.3d 252, 253 n.1 (11th Cir. 1995) (holding that Heck did not bar Datz's S 1983 unlawful search claim "because, even if the pertinent search did violate the Federal Constitution, Datz' conviction might still be valid considering such doctrines as inevitable discovery, independent source, and harmless error").
 
 
 35
 On the other hand, the Second and Sixth Circuits have held that a S 1983 Fourth Amendment claim alleging illegal search and seizure does not accrue under Heck until the criminal charges have been dismissed. See, e.g., Shamaeizadeh, 182 F.3d at 399; Woods v. Candela, 47 F.3d 545, 546 (2d Cir. 1995); cf. Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995) (staying S 1983 proceedings until criminal proceeding had run its course to allow a determination of what evidence was presented at the criminal trial: "[I]f he is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his [allegedly unlawful] arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction.")
 
 
 36
 We believe that the Second and Sixth Circuits have taken the better approach and therefore hold that aS 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned. Such a holding will avoid the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases and will therefore fulfill the Heck Court's objectives of preserving consistency and finality, and preventing "a collateral attack on[a] conviction through the vehicle of a civil suit." See Heck, 512 U.S. at 484-85.
 
 
 37
 In the present case, the evidence seized in the allegedly unlawful search--gaming devices--was an essential element of the crime of which Harvey was charged--illegal possession of gaming devices. If Harvey had been tried and convicted of this crime, a S 1983 action challenging the legality of the search and resulting seizure of this evidence, if successful, would have implicated the validity of the resulting conviction and would not, therefore, have been cognizable under Heck. See id.; Shamaeizadeh, 182 F.3d at 399; Mackey, 47 F.3d at 746. Harvey's S 1983 claim was not, therefore, cognizable under Heck until the criminal charges against him were dismissed in December 1994. See Shamaeizadeh, 182 F.3d at 397. Thus, Harvey's S 1983 action claiming illegal search and seizure, filed less than three years later, is not statutorily barred.
 
 
 38
 C. Sale of Property Without Due Process Claim
 
 
 39
 Harvey alleges that the defendants deprived him of his property without due process of law when they disposed of the seized gaming devices without giving him prior notice or compensation. "[B]ecause the alleged denial of due process [in disposing of his property without adequate notice of the sale and without following proper procedures] would not implicate the validity of any" conviction for illegal possession of gaming devices, Heck does not apply to Harvey's due process claim. See Beck, 195 F.3d at 559. This claim therefore accrued when Harvey knew or should have known that his property had been disposed of without prior notice or compensation. See id.; see also Cabrera, 159 F.3d at 379 (holding that a S 1983 claim "generally accrues when the plaintiff `knows or has reason to know of the injury which is the basis of the action' "). Harvey contends that he did not have reason to know of the disposal of his property until June 9, 1995. We agree.
 
 
 40
 At the time the property was seized in 1988, possession of these gaming devices was illegal under Montana law, see Mont. Code Ann. S 23-5-153 (1988), and Harvey was therefore charged with illegal possession of gaming devices. In 1991, the legislature amended the law to permit the possession and sale of gaming devices twenty-five years or older. See Mont. Code Ann. S 23-5-153 (1991). Under this amendment, possession of the gaming devices seized by the County was no longer illegal. After this amendment legalized the seized gaming devices, Harvey was informed by the Deputy County Attorney that the devices would be returned to him. Charges for possession of the gaming devices were, however, still pending against Harvey. It was reasonable for Harvey to believe that, until the charges against him were dropped or he was either convicted or acquitted of the charges, the County would retain possession of the gaming devices that proved an essential element of the crime charged. Thus, until Harvey was actually informed that the charges against him had been dropped, he did not have reason to believe that the County would dispose of the property.
 
 
 41
 Harvey first learned that the charges against him had been dropped in May 1995. He moved for return of the property on June 2, 1995, and was informed for the first time on June 9, 1995, that the property had been disposed of. We hold that in this situation, Harvey first had reason to know that the property had been disposed of, and that he had therefore been deprived of his property without due process of law, on June 9, 1995. Thus, Harvey's due process claim did not accrue until that date. See Cabrera, 159 F.3d at 379. Because Harvey filed his original complaint on May 19, 1997, less than three years after his due process claim accrued, this claim is not statutorily barred.
 
 IV.
 
 42
 The district court's dismissal of the claim against Judge Hernandez based on absolute judicial immunity is AFFIRMED. The district court's dismissal of Harvey's S 1983 claims on statute of limitations grounds is REVERSED and the case is REMANDED to the district court for further proceedings.
 
 
 43
 AFFIRMED in part. REVERSED and REMANDED in part. Costs to appellant.
 
 
 
 Notes:
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).
 
 
 [2]
 This statute was amended in 1991 to permit the possession and sale of gaming devices twenty-five years or older. See Mont. Code Ann. S 23-5153 (1991).
 
 
 [3]
 The district court also dismissed defendants Montana Department of Revenue; Dale R. Mrkich, Deputy County Attorney for Yellowstone County; and the Billings Police Department. Harvey does not appeal the dismissal of these additional defendants.
 
 
 [4]
 Harvey's notice of appeal states only that he is appealing the district court's "Order and Judgment of October 13, 1998."
 
 
 [5]
 Harvey also relies on Montana Code Annotated S 27-2-102. Because federal law, not state law, governs when a cause of action accrues in a S 1983 action, see Cabrera, 159 F.3d at 379, Harvey's reliance on Section 27-2-102's definition of when an action accrues is misplaced.
 
 
 [6]
 In Cabrera, we addressed the applicability of Heck to a S 1983 claim alleging false arrest and false imprisonment. 159 F.3d at 380. In that case, Cabrera had been arrested and convicted of disturbing the peace. In his S 1983 action, Cabrera alleged the police officers arrested him without probable cause and falsely imprisoned him. See id. at 377. The officers responded that they heard Cabrera challenging someone to fight and that hearing this challenge provided probable cause to arrest Cabrera for disturbing the peace. See id. at 380. We held that, "[o]n these facts, finding there was no probable cause would `necessarily imply' that Cabrera's conviction for disturbing the peace was invalid. Therefore, under Heck, Cabrera's false arrest and imprisonment claims were not cognizable and did not accrue until his conviction was invalidated." Id