Michael Alan CROOKER, Plaintiff

v.

Patrick BURNS et al., Norman Shink, Bryon Dailey et al., Stephen Swanson, Jane Heffner et al., Edward Cronin, Sean Condon, and Onofrio Minafo, Defendants.

Civil Action Nos. 06–30187–MAP, 06–30123–MAP, 06–30214–MAP, 07–30007–MAP, 07–30008–MAP, 07–30065–MAP, 07–30068–MAP, 07–30077–MAP.

United States District Court,
D. Massachusetts.

April 10, 2008.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for United States of America.

## MEMORANDUM AND ORDER RE: REPORTS AND RECOMMENDATIONS FOR SUMMARY DISMISSAL PURSUANT TO 28 U.S.C. § 1915A (Dkt. Nos., respectively, 20, 12, 15, 15, 17, 9, 6, and 6)

PONSOR, District Judge.

### I. INTRODUCTION

*Pro se* Plaintiff Michael Alan Crooker, a federal prisoner, has filed eight separate complaints against Defendants Patrick Burns, Norman Shink, Bryon Dailey, Stephen Swanson, Jane Heffner, Edward Cronin, Sean Condon, and Onofrio Minafo. Defendants are all federal agents who were involved in the execution of search warrants in the course of a criminal investigation of Plaintiff. Crooker, seeking monetary damages, charges Defendants with violations of the Fourth Amendment under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and negligence under the Federal Tort Claims Act.

As suits by a federal prisoner against government officials, these cases are subject to an initial screening for frivolousness, maliciousness, or failure to state a claim pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A. This task was referred to Chief Magistrate Judge Kenneth P. Neiman, who on August 15, 2007 recommended in identical memoranda that all eight of the complaints listed in the caption of this memorandum be dismissed without prejudice for failure to state a claim for which relief might be granted. (*See, e.g., Crooker v. Burns,* No. 06–30187, Dkt. No. 20, Report and Recommendation for Summ. Dismissal Pursuant to 28 U.S.C. § 1915A ("Report and Recommendation").)

For the reasons stated below, based in large part on developments taking place subsequent to the issuance of the recommendation, the court will decline to adopt the recommendation that these eight cases be dismissed but will order that all proceedings in the cases be stayed pending disposition of new, recently initiated criminal charges against Plaintiff.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is currently serving a prison term following his conviction for being a felon in possession of a firearm silencer. He was charged with that crime after a report that he was illegally sending volatile chemicals through the mail prompted federal agents to seize one of his mailed parcels, at which point they discovered that it contained the silencer. As part of the investigation aimed at Crooker, federal officials executed search warrants on Plaintiff's residence and his parent's home, where he had recently resided and stored some personal property. They also arrested Crooker and searched his car and computer.

Pursuant to these searches, the government seized numerous items including scientific equipment, an inventory of chemicals, some CDs and DVDs, and certain documents. (*See, e.g., Crooker v. Burns,*

No. 06–30187, Dkt. No. 9, Am. Compl. ¶¶ 33, 39.) The majority of the many counts in these suits relate to Crooker's allegations that Defendants exceeded the scope of the relevant search warrants both in regard to the articles seized and the intrusiveness of the search.[1]

Following a jury trial, Crooker was convicted of being a felon in possession of the firearm silencer on July 11, 2006. (No. 04–30034.) Based on Plaintiff's very serious criminal record, the court sentenced Plaintiff to 262 months in prison in June 2007. That conviction is currently on appeal before the First Circuit. (No. 07–1964.)

In late 2006, following his conviction but prior to sentencing, Crooker filed *pro se* actions in state court against several of the individuals involved in investigating his wrongdoing.[2] (*Crooker v. Burns*, No. 06–30187; *Crooker v. Shink*, No. 06–30213; *Crooker v. Dailey*, No. 06–30214; *Crooker v. Swanson*, No. 07–30007; *Crooker v. Heffner*, No. 07–30008; *Crooker v. Spellacy*, No. 07–30022; *Crooker v. Cronin*, No. 07–30065; *Crooker v. Condon*, No. 07–30068; and *Crooker v. Minafo*, No. 07–30077.[3]) The government promptly removed all of these suits to federal court.

The number of counts offered in some of these complaints is so large, and the alleged Fourth Amendment offense often so negligible, that it is hard to avoid the suspicion that the lawsuits are motivated by a desire to harass the agents who participated in building the criminal case against the Plaintiff. The *Burns* complaint, for example, offers 192 counts, with—to take one instance—Count 34 seeking damages for an allegedly illegal seizure of a pair of rubber gloves. The *Dailey* suit contains 248 counts, including claims for damages for seizure of plastic tubing (Count 51) and a pair of tongs (Count 52). *Crooker v. Swanson* tops all the others with 2799 counts, including separate counts for seizure of certain photographs of traffic conditions at Bradley Airport (Counts 1269 through 1274) and for a copy of a newspaper article (Count 1185). The other complaints, many with unnumbered counts, offer claims in a similar vein. Where the counts are numbered, Plaintiff's ad damnum is usually $100,000 per count.

As noted above, a federal prisoner suing government employees, such as Plaintiff, is subject to the screening provisions of the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. §§ 1915A(a), (b). The court referred Crooker's cases to Magistrate Judge Neiman to conduct the necessary review, and he accordingly issued a Report and Recommendation on August 15, 2007.

Judge Neiman recommended that the suits be dismissed for failure to state a claim under the rule set out by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* prohibits a person with an outstanding criminal conviction from bringing a civil suit where "a judgment in favor of the plaintiff [in the civil case] would necessarily imply the invalidity of his conviction or sentence," unless "the conviction or sentence has been reversed

---

1. Other claims include allegations of an unreasonable search of Crooker's vehicle and conversion of the vehicle (*Crooker v. Burns*, No. 06–30187, Dkt. No. 9, Am. Compl. ¶¶ 56, 59, 90), as well as unreasonable seizure of the parcel mailed by Plaintiff and the silencer contained in that package (*Crooker v. Dailey*, No. 06–30214, Dkt. No. 3, Am. Compl. ¶¶ 47–52, 53–66, 69–75).

2. The United States Postal Service is also listed as a defendant in some of the complaints.

3. *Crooker v. Spellacy* was settled in May 2007.

on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487, 114 S.Ct. 2364. This "*Heck* bar" prevents collateral attack on a criminal conviction through a civil suit for damages, promoting consistency between civil and criminal determinations and the finality of criminal appeals. *Id.* at 484–85, 114 S.Ct. 2364.

Though not resting his recommendation on this ground, Judge Neiman also noted his concern about Plaintiff's apparent tactic of filing in state court, where he might proceed *in forma pauperis,* and leaving the burden on the government to remove the case and pay the $350.00 federal court filing fee. As Plaintiff was no doubt aware, he is ineligible for *in forma pauperis* status in federal court as a prisoner who has had at least three previous actions dismissed on grounds of frivolousness, maliciousness, or failure to state a claim. 28 U.S.C. § 1915(g) (the "three strikes" rule). Thus, by filing his lawsuits against federal agents in state court, knowing that they were certain to be removed, he saved himself the cost of the federal filing fee.

In a development subsequent to the issuance of Judge Neiman's recommendation, Judge Edward F. Harrington of the District Court for the District of Massachusetts on March 24, 2008, dismissed a civil action filed by Crooker as a sanction for his abusive pleading practice of repeatedly filing removable actions in state court to avoid the "three strikes" rule. As part of the sanction, Judge Harrington barred Crooker from filing any civil actions without payment of the filing or removal fee. *Crooker v. Merchants CR Guide Company,* No. 08–10382 (D.Mass. March 24, 2008).

Plaintiff filed timely objections to Judge Neiman's recommendation in this case, arguing that his claims fell within an exception outlined in footnote seven of the *Heck* decision, covering civil actions whose success does not necessarily imply the invalidity of the related criminal conviction. 512 U.S. at 487 n. 7, 114 S.Ct. 2364.

Since the issuance of the Report and Recommendation and Plaintiff's filing of objections there has been, in addition to Judge Harrington's decision, a second significant development in Crooker's situation. On December 4, 2007, Crooker was indicted on new, serious charges, including mailing a threatening communication, threatening to use a weapon of mass destruction, threatening to transfer a toxin (specifically, ricin) for use as a weapon, and possession of toxins (ricin and abrin) for use as weapons. (*United States v. Crooker,* No. 07–30038, Dkt. No. 1.) This indictment appears to have been based in part on evidence seized during the searches currently under challenge by Plaintiff.

## III. DISCUSSION

Footnote seven of *Heck* has cast doubt on the propriety of dismissing unreasonable search or seizure claims where a finding of a Fourth Amendment violation might not imply the invalidity of a related criminal conviction. This situation might arise, for example, where a civil jury finds that a Fourth Amendment violation occurred, but where the evidence seized during the course of the improper search might nevertheless be admissible at a criminal trial based on doctrines such as inevitable discovery or independent source. *See Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364.

Circuit courts have split on whether the Supreme Court's allusion to this possibility signifies that civil Fourth

Amendment claims should receive a blanket exception from the application of *Heck* or whether courts should analyze such complaints on a case-by-case basis. As Judge Neiman ably explained, the Seventh, Eighth, Tenth, and Eleventh Circuits have adopted the "blanket exception" approach, while the Second, Sixth, and Ninth Circuits, and arguably the Fifth Circuit as well, follow the "case-by-case" approach. (Report and Recommendation at 5–7 (*citing Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 559 n. 4 (10th Cir.1999); *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir.1998); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir.1996); *Datz v. Kilgore*, 51 F.3d 252, 253 n. 1 (11th Cir. 1995) (per curiam); *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir.2000); *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995); *Woods v. Candela*, 47 F.3d 545, 546 (2d Cir.1995) (per curiam); *Mackey v. Dickson* 47 F.3d 744, 746 (5th Cir.1995))). The First Circuit has not weighed in on this issue.

Plaintiff does not appear to challenge Judge Neiman's recommendation that this court apply the "case-by-case" approach. Indeed, evolving authority seems to favor this mode of analysis, rather than the "blanket exception" approach taken by some courts. *See also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety–Div. of State Police*, 411 F.3d 427, 449 (3d Cir.2005). Leaving aside the merits of the arguments relied on by the circuit courts that have addressed this issue, the Supreme Court itself recently appeared to confirm the position that *Heck* might apply to Fourth Amendment claims in *dicta* appearing in *Wallace v. Kato*, —— U.S. ——, 127 S.Ct. 1091, 166 L.Ed.2d 973 (U.S.2007).

In that case, the Court observed, in a slightly different context, "that a Fourth Amendment claim can necessarily imply the invalidity of a conviction, and that if it does it must, under *Heck*, be dismissed." *Wallace*, 127 S.Ct. at 1099 n. 5. This statement strongly suggests that the Supreme Court never meant footnote seven of *Heck* to completely exempt Fourth Amendment claims from its holding.

In his objections Crooker criticizes the absence in the Recommendation of an analysis of each count of his Fourth Amendment Claims. He points out that most of the items he claims were improperly seized were not introduced as evidence and played no role in his trial. A favorable ruling on his constitutional claim, he argues, would in no way imply that his criminal conviction was invalid.[4]

It is true that courts have hesitated or declined to dismiss civil claims on the authority of *Heck*, where the finding of a Fourth Amendment violation for purposes of a civil damage claim would have no negative implications for a related criminal conviction. *See, e.g., Ballenger v. Owens*, 352 F.3d 842, 847 (4th Cir.2003) (discussing whether allegedly illegally seized drugs could be introduced into evidence under independent source or inevitable discovery doctrines, or whether they were central to conviction, in deciding if *Heck* bar applied to Fourth Amendment claim); *Abney v. Trevino*, 56 Fed.Appx. 798, 799 (9th Cir. 2003) (unpublished) ("[Plaintiff] alleged that defendants . . . illegally searched and seized property beyond the scope of a search warrant, and that none of the seized property was introduced into evidence at trial. The district court erred by dismissing this claim because on the rec-

---

4. According to Crooker, "a small handful of [these] claims may be precluded by *Heck* but they are very few in number, possibly 1% of his total claims." (*Crooker v. Burns*, No. 06–30187, Dkt. No. 22, Pl. Crooker's Objection to Report and Recommendation for Summ. Dismissal Pursuant to 28 U.S.C.1915A at 3.)

ord before us a judgment in [Plaintiff's] favor on this claim would not necessarily imply the invalidity of his conviction.").

Moreover, a civil claim for damages arising from a seizure of property does seem unlikely to "necessarily imply" that a conviction is invalid where the property in question was never introduced at trial. *See Schwartz v. City of Phoenix,* 83 F.Supp.2d 1102, 1104–05 (D.Ariz.2000) ("Plaintiff can seek damages for an allegedly unreasonable search and seizure that did not produce evidence introduced at his criminal trial.").

Recognizing that, in general, the *Heck* analysis must find its roots in the specifics of the Fourth Amendment claim, the court in approaching the eight complaints here must confront serious practical problems. An item-by-item comparison of the 2799 counts of the *Swanson* complaint, for example, with the evidence offered at Plaintiff's criminal trial would, as Judge Neiman noted, constitute "an extreme waste of judicial resources." (Report and Recommendation at 9.) And since the issuance of the Report and Recommendation, the context of the court's analysis has been further complicated by the new indictment issued against Plaintiff. This development raises the possibility that a determination during any civil trial of the propriety of the searches might not only imply the invalidity of Crooker's past conviction but also become entwined with issues related to his pending criminal charges and future trial as well.

Several courts have attempted to grapple with similar situations involving pending criminal proceedings since *Heck* was decided. *See, e.g., Harvey v. Waldron,* 210 F.3d 1008, 1013–16 (9th Cir.2000) (applying *Heck* to a civil claim overlapping with pending criminal charges); *Shamaeizadeh v. Cunigan,* 182 F.3d 391, 397 (6th Cir. 1999) (same); *Covington v. City of New*

*York,* 171 F.3d 117, 124 (2d Cir.1999) (same); *Smith v. Holtz,* 87 F.3d 108, 109 (3d Cir.1996) (same).

■ Most importantly, within the last year the Supreme Court has itself addressed this issue. *Wallace v. Kato,* ─── U.S. ───, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), dealt with the effect of the *Heck* "deferred accrual" rule. That rule dictates that the statute of limitations for a claim does not begin to accrue with respect to a plaintiff still appealing a criminal conviction until a ruling on the conviction's validity has issued, thus eliminating the possibility that the limitations period for bringing a civil claim for a constitutional violation might run out before criminal proceedings ended in a favorable disposition for the plaintiff. *Wallace,* 127 S.Ct. at 1098 (*citing Heck v. Humphrey,* 512 U.S. 477, 488, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)); *See also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety–Div. of State Police,* 411 F.3d 427, 435 (3d Cir. 2005).

■ *Wallace* held that the deferred accrual rule does not apply where a plaintiff brings a civil suit before being convicted of any crime, rejecting the idea that "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside." 127 S.Ct. at 1098 (emphasis omitted). Instead of requiring dismissal of civil claims brought in the shadow of an impending criminal case under *Heck,* the Court noted that

if a plaintiff files … any … claim related to rulings that will likely be made in a pending or anticipated criminal trial [ ], it is within the power of the district court, and in accord with common practice, to stay the civil action

until the criminal case or the likelihood of a criminal case is ended.

*Id.*

▮ Though the issues now before the court are not precisely on all fours with those in *Wallace*, the decision's logic manifestly points to the proper course of action here, which is to stay all of these civil cases until the pending criminal indictment is resolved. *Cf. Fox v. DeSoto*, 489 F.3d 227, 233–34 (6th Cir.2007) (stating that *Wallace* overrides previous Sixth Circuit precedent applying *Heck* bar in pre-conviction context); *Mallard v. Potenza*, No. 94–233, 2007 WL 4198246, at \*3, 2007 U.S. Dist. LEXIS 86336, at \*6–7 (E.D.N.Y. Nov. 21, 2007) (unpublished) (citing *Wallace* with respect to disposition of illegal search and seizure claim); *Curry v. Hennessey*, No. 07–1757, 2007 WL 1394531, at \*1–2, 2007 U.S. Dist. LEXIS 37667, at \*3–\*5 (N.D.Cal. May 10, 2007) (staying case pursuant to *Wallace*); *Watts v. Epps*, 475 F.Supp.2d 1367, 1369 (N.D.Ga.2007) ("*Wallace* teaches that it is the issuance of a stay—and not the tolling of an action—that is the appropriate prophylactic device to prevent federal courts from undercutting state criminal convictions by preordaining in § 1983 actions the constitutionality of arrests or seizures.").

This disposition will permit the full development of a record regarding the criminal proceedings so the court may better judge the relevance of the seizures challenged by Plaintiff and rule consistently on any constitutional issues. Though it is conceivable that some of the allegedly improper seizures involved items irrelevant to both Crooker's outstanding criminal conviction and the pending charges, and thus escape the *Heck* bar, conservation of judicial resources dictates a single determination as to the applicability of *Heck* at the conclusion of all criminal proceedings.

Upon the expiration of the stays in this case, the government will be free to press its argument that Plaintiff's suits should be dismissed as frivolous and malicious. (Dkt. No. 24, Resp. to Pl.'s Objection to Report and Recommendation for Summ. Dismissal 1–2.) The court, at that time, will weigh the persuasiveness of Judge Harrington's decision on this issue. In the meantime, Judge Harrington's order will prohibit the filing of any further federal civil suits by Plaintiff, or their removal to federal court from state court, without the payment of the full filing fee.

## IV. *CONCLUSION*

For the foregoing reasons, further proceedings in all eight civil cases listed in the caption of this memorandum are hereby ordered stayed pending complete disposition of the pending criminal charges against Plaintiff. If Plaintiff desires to pursue one or more of the cases after disposition of the criminal charges against him, he must file a written request in the particular case to the effect that the stay be lifted within thirty days of disposition of the criminal charges, unless an appeal is filed. If there is an appeal, the request to lift the stay must be filed within thirty days of completion of the appellate process. A copy of this memorandum will be docketed in each of the eight cases cited in the caption of this memorandum.

Also for the foregoing reasons, the court declines to adopt the report and recommendations docketed as follows: *Burns*, No. 06–30187 (Dkt. No. 20); *Shink*, No. 06–30213 (Dkt. No. 12); *Dailey*, No. 06–30214 (Dkt. No. 15); *Swanson*, No. 07–30007 (Dkt. No. 15); *Heffner*, No. 07–30008 (Dkt. No. 17); *Cronin*, No. 07–30065 (Dkt. No. 9); *Condon*, No. 07–30068 (Dkt. No. 6); and *Minafo*, No. 07–30077 (Dkt. No. 6).

It is So Ordered.

*REPORT AND RECOMMENDATION FOR SUMMARY DISMISSAL PURSUANT TO 28 U.S.C. § 1915A*

August 15, 2007

NEIMAN, United States Chief Magistrate Judge.

Michael Alan Crooker ("Plaintiff"), a federal prisoner who is currently appealing his recent conviction, brings these *pro se* civil actions against the following federal agents who executed one or more search or seizure warrants during the investigation of his criminal case: Patrick Burns, Norman Shink, Bryon Dailey, Stephen Swanson, Jane Heffner, Edward Cronin, Sean Condon and Onofrio Minafo. Three of the actions also list the U.S. Postal Inspection Service or the United States of America (hereinafter "the Government") as a defendant.

Plaintiff's eight actions have been referred to this court for preliminary screening pursuant to 28 U.S.C. § 1915A. As will be described, the court believes that these actions cannot proceed while Plaintiff's criminal appeal is pending. Accordingly, the court will recommend that all of Plaintiff's complaints be dismissed, without prejudice, for failing to state claims upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

## I. *BACKGROUND*

On July 11, 2006, a federal jury in Springfield, Massachusetts, convicted Plaintiff of being a felon in possession of a firearm. *See United States v. Michael Alan Crooker*, 04–cr–30034–MAP. On or about June 14, 2007, District Judge Michael A. Ponsor entered judgment and sentenced Plaintiff to 262 months in prison. *See id.* Plaintiff thereafter appealed his conviction to the United States Court of Appeals for the First Circuit. *See United States v. Crooker*, First Circuit Docket No. 07–1964.

Following his conviction, but prior to sentencing, Plaintiff filed nine *pro se* actions against federal agents in state court. *See Crooker v. Burns*, 06–cv–30188–MAP, *Crooker v. Shink*, 06–cv–30213–MAP, *Crooker v. Dailey*, 06–cv–30214–MAP, *Crooker v. Swanson*, 07–cv–30007–MAP, *Crooker v. Heffner*, 07–cv–30008–MAP, *Crooker v. Spellacy*, 07–cv–30022–MAP, *Crooker v. Cronin*, 07–cv–30065–MAP, *Crooker v. Condon*, 07–cv–30068–MAP, and *Crooker v. Minafo*, 07–cv–30077–MAP.[5] In each instance, the Government removed the action to this court pursuant to 28 U.S.C. § 1442. All of the cases allege Fourth Amendment violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and violations of the Federal Torts Claims Act ("FTCA"), and challenge searches or seizures conducted in connection with Plaintiff's criminal prosecution.

## II. *DISCUSSION*

Because Plaintiff is a prisoner, his complaints are subject to the provisions of the Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104–134, 110 Stat. 1321–1375 (1996). As the Supreme Court recently reiterated, Congress enacted the PLRA in response to the large number of prisoner complaints filed in federal court challenging prison conditions or claiming civil rights violations. *See Jones v. Bock*, 549 U.S. 199, ——, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007). According to the Court, most types of these actions are

---

**5.** *Crooker v. Spellacy* has settled. Also settled is a related case Plaintiff filed against the City of Agawam, *Crooker v. City of Agawam*, 07–cv–30029–MAP. Plaintiff contends as well that he has a connected case pending in front of Magistrate Judge Judith G. Dein, *Crooker v. Microsoft Corp.*, 07–cv–10403–JGD. This court offers no opinion on that case.

without merit or frivolous. *See id.* However, "[o]ur legal system," the Court continued, "remains committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Id.* "The challenge lies in ensuring that the flood of nonmeritorious claims do not submerge and effectively preclude consideration of the allegations with merit." *Id.*

One provision of the PLRA, codified at 28 U.S.C. § 1915A, grants the court the authority to screen and, if necessary, dismiss prisoner complaints, specifically those brought against governmental officers, entities or employees. *See* 28 U.S.C. § 1915A(b)(1). Indeed, section 1915A *requires* a district court to dismiss such an action if it determines that the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted." *Id.See also McGore v. Wrigglesworth,* 114 F.3d 601, 612 (6th Cir.1997) (noting that district courts should *sua sponte* dismiss complaints that fail to satisfy section 1915A's screening requirements). Plaintiff's suggestions to the contrary, (*See Burns* Document No. 14, *Shink* Document No. 8, *Dailey* Document No. 10, *Swanson* Document No. 9, *Heffner* Document No. 11, and *Cronin* Document No. 3), it is of no moment that the civil actions were originally filed in state court and then removed to this forum. *See, e.g., Duff v. Yount,* 51 Fed.Appx. 520 (6th Cir.2002) (upholding section 1915A screening of removed case); *Miller v. Lagrange County Sheriff,* 2007 WL 670940, at *1 (N.D.Ind. Feb. 27, 2007) ("Because Mr. Miller is a prisoner as defined in § 1915A(c) and the defendants he seeks redress from are governmental officials, § 1915A requires the Court to screen his complaint, even though he originally filed it in state court."); *Hashim v. Berge,* 2002 WL 32359936, at *1 (W.D.Wis. Jan. 28, 2002) ("Defendant notes correctly that now that the case has been removed to federal court, the complaint must be screened pursuant to 28 U.S.C. § 1915A.").

To be sure, Plaintiff's pleadings, being those of a *pro se* litigant, must be construed liberally. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Instituto de Educacion Universal Corp. v. United States Dep't of Educ.,* 209 F.3d 18, 23 (1st Cir.2000). However, even under a generous reading, the instant actions, in this court's opinion, fail to state claims upon which relief may be granted and, therefore, ought to be dismissed, albeit without prejudice, pursuant to section 1915A. The court's reasoning follows.

### A.

First and foremost, the court believes that, given Plaintiff's extant criminal appeal, his civil complaints are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and its progeny. As explained in Part B below, this should come as no surprise to Plaintiff.

In *Heck,* the Supreme Court held that a prisoner may not maintain a civil rights action for damages if a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence" unless he can show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487, 114 S.Ct. 2364.[6] In the present cases, Plaintiff obvi-

---

**6.** Although *Heck* involved a civil rights action brought under 42 U.S.C. § 1983, suits brought under *Bivens* are treated in the same manner. *See Pandey v. Freedman,* 1995 WL

ously cannot show that his conviction has been reversed, expunged, or invalidated insofar as his criminal appeal has only just begun. Thus, Plaintiff's civil cases may not proceed if a judgment in his favor "would necessarily imply the invalidity of his conviction or sentence."

Before addressing this question, however, the court points out that the circuit courts of appeal have taken different approaches as to whether *Heck* even applies to claims alleging damages resulting from the illegal searches or seizures of property. Neither the Supreme Court nor the First Circuit has yet addressed this specific issue. The varying approaches stem from *Heck's* footnote seven, which provides a dictum example of a civil rights claim that would not "necessarily" imply invalidation of the criminal conviction:

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the ... plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery ... and especially harmless error ... such a[n] ... action would not necessarily imply that the plaintiff's conviction was unlawful.

*Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. 2364. The Seventh, Eighth, Tenth, and Eleventh Circuits have held that footnote seven can be read to allow for a blanket exception for illegal search or seizure claims, i.e., permitting such claims to proceed despite the fact that the criminal conviction has not been overturned. *See, e.g., Beck v. City of Muskogee Police Dep't,* 195 F.3d 553, 559

n. 4 (10th Cir.1999); *Copus v. City of Edgerton,* 151 F.3d 646, 648 (7th Cir.1998); *Simmons v. O'Brien,* 77 F.3d 1093, 1095 (8th Cir.1996); *Datz v. Kilgore,* 51 F.3d 252, 253 n. 1 (11th Cir.1995) (per curiam). The Second, Sixth, and Ninth Circuits take a different approach, holding instead that *Heck* bars an illegal search or seizure claim, as with any other such claim, from going forward until the prior criminal conviction of the claimant has been invalidated. *See, e.g., Harvey v. Waldron,* 210 F.3d 1008, 1015 (9th Cir.2000); *Schilling v. White,* 58 F.3d 1081, 1086 (6th Cir.1995); *Woods v. Candela,* 47 F.3d 545, 546 (2d Cir.1995) (per curiam). The Fifth Circuit appears to follow this approach as well. *See Mackey v. Dickson,* 47 F.3d 744, 746 (5th Cir.1995) (staying civil proceedings until criminal proceeding had run its course).

In this court's opinion, the latter approach—that *Heck* bars an illegal search or seizure claim from going forward until the prior criminal conviction of the claimant has been invalidated—is far more persuasive. For one thing, such an approach "will avoid the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases and will therefore fulfill the *Heck* Court's objectives of preserving consistency and finality, and preventing 'a collateral attack on [a] conviction through the vehicle of a civil suit.'" *Harvey,* 210 F.3d at 1015 (quoting *Heck,* 512 U.S. at 484–85, 114 S.Ct. 2364). In addition, "[t]he fact that a Fourth Amendment violation may not necessarily *cause* an illegal conviction does not lessen the requirement that a plaintiff show that a conviction was invalid as an element of *constitutional injury.*" *Schill-*

---

568490, at *1 (1st Cir. Sept. 26, 1995) (unpublished) (citing *Stephenson v. Reno,* 28 F.3d 26, 27 (5th Cir.1994); *Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995) ("Given the similarity between suits under § 1983 and *Bivens,* we

conclude that *Heck* should apply to *Bivens* actions as well.")). *See also Abella v. Rubino,* 63 F.3d 1063 (11th Cir.1995) ("[C]ourts generally apply § 1983 law to *Bivens* cases.").

*ing*, 58 F.3d at 1086 (emphasis in original). *See also Mackey*, 47 F.3d at 746 ("[I]f he is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his [allegedly unlawful] arrests, then his [civil rights] damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction.").

Having settled on the appropriate legal framework, the court finds its review of Plaintiff's complaints quite easy. As indicated, each of Plaintiff's actions challenges searches or seizures conducted in connection with his criminal prosecution. As interpreted by the Second, Fifth, Sixth and Ninth Circuits and this court as well, however, *Heck* bars such complaints—which necessarily imply the invalidity of Plaintiff's prior criminal conviction—from going forward until his conviction has been reversed, expunged or invalidated. Since that has not occurred, Plaintiff's complaints fail to state claims upon which relief may be granted. Accordingly, the court has little choice but to recommend that the complaints be dismissed without prejudice.

## B.

Anticipating that *Heck* might require dismissal of his actions, Plaintiff filed what are in effect motions for partial stays in the *Burns, Dailey, Swanson* and *Heffner* cases. (*See Burns* Document No. 15, *Dailey* Document No. 11, *Swanson* Document No. 10, and *Heffner* Document No. 12.) Those motions, which the court has today denied, variously argue that each case be stayed pending the outcome of his appeal but only as to those items of property seized during the searches or seizures which the court deems "material" to his criminal conviction. Most items, Plaintiff contends, lack any significant relevance to the conviction and are not cognizable un-

der *Heck.* In fact, Plaintiff asserts, many of the items would fall under what he refers to as the "harmless error exception" purportedly contained within footnote seven of *Heck.* With this evidently in mind, Plaintiff has structured most of his complaints by tediously labeling each item seized as a separate "count." With thousands of so-called "counts" listed, Plaintiff is, in effect, asking the court to undertake the considerable task of weighing each item's relevancy to his criminal conviction.

Although creative, Plaintiff's argument does not alter the court's belief that a judgment in each of his civil cases, were they allowed to go forward, could necessarily imply the invalidity of his conviction. To be sure, the court considered whether some of the challenged items of property had been suppressed during the criminal proceedings. If so, the court reasoned, perhaps those items—and, hence, their corresponding civil "counts"—would not necessarily imply the invalidity of Plaintiff's conviction. Unfortunately for Plaintiff's cause, however, it appears from even the most cursory review of the criminal case file that no such evidence was suppressed or otherwise outside the purview of his criminal appeal. *See, e.g., United States v. Crooker,* 04–cr–30034–MAP, (Document No. 80) (denying omnibus motion to suppress after four days of evidentiary hearings). Accordingly, in this court's opinion, none of Plaintiff's so-called "counts" can escape *Heck's* call for dismissal.

There are yet other problems with Plaintiff's motions for partial stays. First, as implied, to follow Plaintiff's lead and separately examine each item seized would be an extreme waste of judicial resources as his complaints list thousands of items. Second, Plaintiff cites no case, nor has the court found any upon its own review, where a distinction was made for a "harm-

less error exception." (Indeed, other than *Heck* itself, Plaintiff has provided no case-law on these topics at all.) Third, as the Government points out, issuing a ·partial stay would result in piecemeal litigation and thereby frustrate the efficient adjudication of the search and seizure issues.[7]

## C.

Finally, the court is compelled to register its concern for what appears to be a disturbing litigation strategy on Plaintiff's part. While none of Plaintiff's actions to date lead the court to suggest *sua sponte* dismissal on grounds of *maliciousness* or *frivolousness, see* 28 U.S.C. § 1915A(b)(1), three aspects of Plaintiff's efforts are particularly troublesome.

First, the record suggests that Plaintiff brought these lawsuits in state court solely to put the Government to the burden of removing them to federal court.[8] If true, Plaintiff's ulterior motives raise significant concerns. *Cf. Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1006 (9th Cir.2002) (noting that a civil action will be deemed "clearly vexatious or brought primarily for purposes of harassment when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant") (citation and internal quotation marks omitted).

Second, by initiating at least ten individual lawsuits in state court, knowing they would have to be removed by the Government, Plaintiff has successfully evaded the $350 filing fee for each case (approximately $3,500 total). To be sure, it appears that Plaintiff filed Affidavits of Indigency and Requests for Waiver in state court, thereby allowing him to file there at no cost. (*See, e.g., Heffner* Document No. 4, Exhibit.) As Plaintiff is no doubt aware, however, he is a likely federal "three strikes" candidate under 28 U.S.C. § 1915(g) (conceivably having had three or more civil actions since April of 1996 dismissed on the merits), and, therefore, potentially ineligible for *in forma pauperis* status here.

Third, by bringing his lawsuits in state court, Plaintiff appears to have successfully sidestepped the preliminary screening mechanism of 28 U.S.C. § 1915, another provision of the PLRA which allows for dismissal of *in forma pauperis* complaints that are "frivolous" or "malicious." 28 U.S.C. § 1915(e)(2)(B). Of course, as indicated earlier in this report and recommendation, the Government's removal does not prevent the court from screening Plaintiff's complaints under section *1915A.* Still, by filing in state court, summonses have issued without section *1915* screening.[9]

---

**7.** To that end, the Government has filed in *Heffner* a Motion for an Order requesting, *inter alia,* that the court consolidate these cases into one action. (*See Heffner* Document No. 5.) Given the instant recommendation, however, the court has today denied the Government's Motion for an Order without prejudice.

**8.** In a letter to defense counsel, Plaintiff wrote: "You ought to consider globally settling these many Fourth Amendment cases under the FTCA, if just to conserve government resources. . . . As you know, I am relentless and we will be in litigation for many years as we have been in the past. There are

no shortage of defendants who trampled my abode and I can envision 50 more lawsuits in the pipeline, all of which you will have to individually remove to Federal Court." *Crooker v. Heffner,* 07–cv–30008–MAP (Document No. 6) (Gov't's Mem. in Supp. of Motion for Order, Ex. A).

**9.** That being said, the defendant in *Crooker v. Microsoft Corp.,* 07–cv–10403–JGD is pursuing a motion to dismiss based, in part, on frivolousness under section 1915. As indicated *supra* at n. 1, this court offers no opinion on that case. *See also Duff,* 51 Fed.Appx. 520 (upholding screening of removed case under sections 1915 and 1915A).

In summary, Plaintiff's maneuvering and apparent evasions have heightened the court's suspicion of these proceedings. Nonetheless, the court does not ground its recommendation on the "frivolous" or "malicious" prohibitions outlined in sections 1915 or 1915A. Rather, as articulated above, the court believes that these cases are procedurally barred by *Heck* and its progeny. For that reason, therefore, the court will recommend that Plaintiff's complaints be dismissed pursuant to section 1915A for failing to state claims upon which relief may be granted.

### III. CONCLUSION

For the reasons stated, the court recommends that Plaintiff's complaints be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915A. Should this report and recommendation be adopted, the court further recommends that Plaintiff's motions for summary judgment in *Burns* (Document No. 12), *Dailey* (Document No. 7) and *Swanson* (Document No. 6) be denied as moot.[10]

---

**10.** Plaintiff is advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed finds or recommendations to which objection is made and the basis for such objection. Plaintiff is further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia-Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).